**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Clifford WISE, Defendant–Appellant.**

**No. 88–3752.**

United States Court of Appeals, Eleventh Circuit.

Aug. 7, 1989.

Mark A. Pizzo, Asst. Federal Public Defender, Tampa, Fla., for defendant-appellant.

Ward A. Meythaler, U.S. Atty., Walter E. Furr, Asst. U.S. Atty., Tampa, Fla., for plaintiff-appellee.

Before TJOFLAT and VANCE, Circuit Judges, and PITTMAN *, Senior District Judge.

TJOFLAT, Circuit Judge:

On February 25, 1988, a federal grand jury returned a six-count indictment that charged appellant Clifford Wise with various violations of the narcotics and firearms

---

* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

laws of the United States.[1] After a three-day jury trial, appellant was convicted on all counts. Because appellant's offenses occurred after November 1, 1987, the district court sentenced appellant pursuant to the sentencing guidelines promulgated by the United States Sentencing Commission. *See United States v. Burgess*, 858 F.2d 1512, 1514 (11th Cir.1988). Applying the guidelines to the facts of appellant's case, the district court sentenced appellant to a fifty-year term of incarceration, followed by a ten-year period of supervised release.[2] Appellant now challenges both his convictions and his sentences, alleging various errors at his trial and sentencing hearing. We conclude that only one of appellant's claims merits discussion.[3]

## I.

In sentencing appellant for his narcotics offenses, the district court rightly looked to Sentencing Guidelines § 2D1.1 (Oct.1987) ("Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses")). Under that guideline, the base offense level generally reflects the amount of narcotics implicated in the defendant's offense conduct. *See id.* § 2D1.1(a)(3).[4] In applying guideline 2D1.1 to the facts of appellant's case, the district court deter-

mined that appellant's offense involved over 500 grams of "crack" cocaine base; the court therefore concluded that the base offense level for appellant's crime was 36. *See id.* § 2D1.1 drug quantity table. Appellant now argues that the district court improperly found that over 500 grams of cocaine base were involved in his offense. We disagree.

## A.

In order to apply the guidelines, the district court first must establish the facts and circumstances of the defendant's offense conduct. The court performs this function by means of an adversarial fact-finding process, similar to a civil bench trial. The presentence report prepared by a United States probation officer initiates this process.

In preparing the presentence report, the probation officer's goal is "to provide the court with solid, well researched, verifiable information that will aid the court in selecting the proper guideline range." Division of Probation, Administrative Office of the United States Courts, Presentence Investigation Reports Under the Sentencing Reform Act of 1984, at 2 (1987) [hereinafter "Probation Officer's Manual"]. In the report, the probation officer begins by setting out the details of the defendant's

---

1. Count one of the indictment alleged that appellant conspired to possess more than 50 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 846 (1982). Count two alleged that appellant possessed more than 50 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1982). Counts three through six alleged that appellant distributed various amounts of cocaine at various times in violation of 18 U.S.C. § 2 (1982) and 21 U.S.C. § 841(a)(1) (1982). Count seven alleged that appellant violated 18 U.S.C. § 924(c) (Supp. IV 1986) by using a firearm during the commission of a drug trafficking felony, and count eight charged appellant with possession of a firearm in violation of 18 U.S.C. § 922(g) (Supp. IV 1986).

2. Specifically, the district court sentenced appellant to a forty-five year term of incarceration on counts one, two, five, and six; a thirty-year term of incarceration on counts three and four; and a five-year term of incarceration on counts seven and eight. These sentences were to run concurrently, except for the five-year term of

incarceration imposed on count seven which was to run consecutively, as required by statute. *See* 18 U.S.C. § 924(c)(1) (Supp. IV 1986).

3. Appellant also argues that the district court erred (1) in refusing to give a jury instruction proposed by appellant, (2) in denying a motion to dismiss count two of the indictment as duplicitous, (3) in denying appellant's motion to suppress certain evidence, (4) in concluding that appellant was a career offender under 28 U.S.C.A. § 994(h) (West Supp.1989), and (5) in calculating appellant's criminal history category. Having examined the record, we conclude that these arguments are without merit and unworthy of discussion.

4. In some circumstances, the amount and type of narcotic drug has less relevance. For example, the guidelines provide a fixed base offense level of 38 or 43 for certain narcotics offenses that result in death or serious bodily injury. *See* Sentencing Guidelines § 2D1.1(a)(1), (2) (Oct.1987).

offense conduct and his criminal history. The officer then applies the guidelines to these facts and states the sentencing options available to the court under the guidelines. *See generally id.*[5]

Once the report is prepared, counsel for both the prosecution and the defense have the opportunity to review it and make objections to any guideline applications that they believe to be erroneous. *See* Committee on the Administration of the Probation System, Judicial Conference of the United States, Model Local Rule for Guideline Sentencing (1987). The probation officer considers these objections, makes any amendments to the report that may be required, and sets forth in an addendum to the report the objections that remain unresolved. *See* Probation Officer's Manual at 52. Prior to the sentencing hearing, the report and addendum, together with the probation officer's sentencing recommendation, are submitted to the court. *Id.* The presentence report and addendum thus serve the same purpose as a pretrial stipulation in a civil bench trial, the report establishing the factual and legal backdrop for the sentencing hearing and the addendum enumerating the disputed factual and legal issues that the court must resolve.

■ The final step in the guideline sentencing process is the sentencing hearing. At this hearing, the court engages in a colloquy with both the prosecution and the defense concerning how the guidelines should be applied to the facts of the particular case before the court. In so doing, the court must resolve all factual and legal disputes raised in the addendum to the presentence report—as well as any other objections raised by the parties during the course of the hearing. The court performs this task by making findings of fact and conclusions of law.

## B.

■ In the case at hand, the court, its probation officer, and the parties obviously

had had little experience with the guideline sentencing process. As we have noted, the starting point of this process is the presentence report, which should contain preliminary findings concerning the facts and circumstances of the defendant's offense. In this case, the presentence report stated as follows:

> From January 13, 1988 through January 29, 1988, the total amount of "crack" cocaine seized or purchased was 53 grams. Based upon this information and projecting through the duration of the conspiracy, *the Government contends* that the conspiracy involved in excess of 500 grams of "crack" cocaine.

(Emphasis added.) Recitation of a party's argument is not a finding of fact; thus, the presentence report contained no findings regarding the quantity of cocaine base upon which the district court could have relied in sentencing appellant.

Upon reviewing the presentence report, appellant properly objected to this aspect of the presentence report, contending that the evidence was insufficient to establish that over 500 grams of cocaine base were involved in his offense. Thus, the amount of cocaine involved in appellant's offense became a disputed fact for the district court to resolve at the sentencing hearing.

In resolving this question, the district court asked counsel to state why they believed appellant's offense did or did not involve over 500 grams of cocaine base. The prosecutor stated as follows:

> One of the witnesses testified that the crack was distributed virtually every day for two years and that the Defendant had approximately half a dozen people helping him distribute the crack. In addition, the evidence revealed forty-five hundred dollars in money orders in the Defendant's house which covered only three days in January. That comes to

---

**5.** The Probation Officer's Manual also suggests that the presentence report should discuss other information that might be relevant for sentencing purposes, such as the defendant's family and community ties, mental and physical health, level of education, and employment status; any

fines or provision for restitution that may or must be imposed; and any factors that may warrant departure from the guideline sentencing range. The report should also evaluate the impact of any plea agreement on the sentencing alternatives prescribed by the guidelines.

approximately fifteen hundred dollars a day in money orders which were obviously being used to launder the money and at fifty-six dollars a gram, which was the average price paid by the police for the crack, that computes to approximately twenty-six and a half grams of crack that was distributed every day. Consequently, the Defendant would have distributed approximately five—over five hundred grams in approximately twenty days.

Finally, the Defendant admitted to police officers that he was making ten thousand dollars a week distributing drugs and at fifty-six dollars a gram that comes to approximately one hundred and seventy-eight grams a week. And in fact, on one occasion he said he distributed thirty thousand dollars worth of crack in one week which is five hundred grams in one week all by itself. Consequently, by the Defendant's own admission he was distributing more than five hundred grams of crack during the time of the conspiracy or during the time of the possession charged in count two.

Upon hearing the prosecutor's statement, the court asked counsel for appellant whether he had any response. When counsel stated that he had none, the district court stated that it "adopt[ed] the Government's position."

### C.

To facilitate judicial review of sentencing decisions and avoid unnecessary remands, we believe that sentencing judges should make explicit findings of fact and conclusions of law. *Cf.* Fed.R.Civ.P. 52(a). The court failed to do so here. In this case, however, the court's summary disposition of the parties' factual dispute has not precluded meaningful appellate review. When combined with the appellant's failure to produce contrary evidence or to advance an opposing argument, we conclude that the Government's summation of the evidence adduced at trial provided the court with a sufficient evidentiary basis from which to find that over 500 grams of cocaine base was involved in appellant's offense.

### II.

Because we conclude that there was adequate evidence to support the district court's conclusion that appellant's offense involved over 500 grams of cocaine base, appellant's convictions and sentences are

AFFIRMED.