UNITED STATES of America, Plaintiff–Appellee,

v.

Scott Evan JONES, Defendant–Appellant.

No. 88–3377.

United States Court of Appeals, Eleventh Circuit.

April 30, 1990.

Neal L. Betancourt, Rotchford & Betancourt, P.A., Jacksonville, Fla., for defendant-appellant.

Thomas E. Morris, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee

Before TJOFLAT, Chief Judge, EDMONDSON, Circuit Judge, and HILL, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Scott Evan Jones, having been convicted of bank larceny, appeals from the sentence imposed by the United States District Court for the Middle District of Florida. We note at the outset that since Jones' offense occurred after November 1, 1987, his sentence is governed by The Sentencing Reform Act of 1984, Pub.L. No. 98–473, 98 Stat. 1987 (codified, as amended, in scattered sections of 18 and 28 U.S.C.) and the guidelines promulgated thereunder.

Jones challenges the district court's factual findings on the basis of which the court determined the final offense level. He also asserts that the district court erred in failing to state its reasons for imposing the particular sentence. We find both contentions to be without merit and affirm.

## I.

We state briefly the facts on which the jury verdict and the sentence were based. On November 13, 1987, Jones entered a bank in Jacksonville, Florida, approached a teller, and, with a jacket covering one hand, presented a note demanding money. After activating cameras and a silent alarm, the teller handed Jones approximately $2,568 in "bait money." Jones ran away from the bank, with at least two individuals following him. An FBI agent and a Jacksonville police officer joined the chase and pursued Jones for several blocks, shouting at Jones to halt and eventually firing one shot. The shot struck Jones, but he continued to flee until the two officers overtook him and, after a struggle of several minutes, subdued him with the help of a private security guard.

Jones was indicted for bank robbery under 18 U.S.C. § 2113(a) (1988). He pled not guilty and went to trial, where his counsel, in opening statement, conceded that Jones was guilty of bank larceny. The jury was instructed both on bank robbery and on the lesser-included offense of bank larceny, see id. § 2113(b). It returned a verdict of not guilty on the bank robbery charge but found him guilty of bank larceny.

For sentencing purposes, Jones conceded that he had two prior convictions, one for bank robbery and one for attempted bank robbery. The offenses underlying these convictions occurred on the same day. They involved two different banks in Orlando, Florida, and were approximately ninety minutes apart.

Under the guidelines, bank larceny carries a base offense level of 4. See Sentencing Guidelines § 2B1.1(a) (1990). The district court determined that the proper level for Jones' particular offense was 15, after finding (1) that the taking was from the person of another, see id. § 2B1.1, and (2) that the victim was particularly susceptible to the criminal conduct, see id. § 3A1.1.* The court refused to deduct levels for acceptance of responsibility, finding

(3) that Jones showed no remorse and that his argument at trial that he was guilty of only the lesser-included offense was a trial tactic rather than true acceptance of responsibility. Finally, the court placed Jones in Criminal History Category III, see Sentencing Guidelines Ch. 5, Pt. A sentencing tbl. and commentary, after finding (4) that the two prior convictions were for separate and independent offenses. Jones challenges these four findings. We examine each challenge in turn, mindful that we must accept the district court's factual findings unless they are clearly erroneous, see 18 U.S.C. § 3742(d) (1988); *United States v. Erves*, 880 F.2d 376, 381 (11th Cir.1989).

## A.

The sentencing guidelines group bank larceny with other theft offenses (which, like embezzlement, may involve no contact whatsoever with the victim) and provide that "[i]f the theft was from the person of another, increase [the offense level] by two...." See Sentencing Guidelines § 2B1.1. Jones argues that the district court wrongly determined that his conduct involved such a taking because there was no intimidation or physical invasion of the teller's personal "space" and that therefore the enhancement provision does not apply.

This argument is without merit. Indeed, the commentary to section 2B1.1 specifically excludes intimidation as an enhancement factor for nonforcible theft crimes: "This guideline does not include an enhancement for thefts from the person by means of force or fear; such crimes are robberies." Rather, as the commentary explains, " '[f]rom the person of another' refers to property, taken without the use of force, that was being held by another person or was within arms' reach. Examples include pick-pocketing or non-forcible purse-snatching, such as the theft of a purse from a shopping cart." It is undisputed that Jones took the money from the bank tell-

---

* The district court also enhanced the offense level after finding that the crime was committed with more than minimal planning and that Jones had obstructed justice by resisting arrest and by giving a false name after arrest. Jones does not challenge these enhancements.

er's hands. The district court was therefore clearly correct in determining that Jones took the property from the person of another.

#### B.

■ Jones' next challenge is to the district court's finding that the bank teller was a particularly vulnerable victim under section 3A1.1, which provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was particularly susceptible to the criminal conduct." He argues that because the teller was surrounded by a protective teller's cage, cameras, alarms and trained security personnel, and because she herself was trained to deal with a thief's demands for money, she was actually less "vulnerable" than the average victim.

We think that Jones confuses *vulnerability* of the victim with *susceptibility to the criminal conduct.* Although a bank teller *may* risk less physical injury than the untrained and unprotected "man in the street," and although some would-be thieves are no doubt deterred by a bank's security measures, a teller is a very likely target of the criminal conduct that constitutes larceny. A bank teller is stationed at an area of the bank designed for public access; the teller's duty is to transact business with the bank's customers, and he or she cannot easily avoid contact with (or elude) those customers or other members of the public, including thieves. Furthermore, a teller is known to handle considerable amounts of money, making him or her a particularly promising victim. Accordingly, we agree with the district court's finding that the bank teller was particularly susceptible to the offense of larceny.

#### C.

■ Jones also challenges the district court's refusal to reduce his offense level for acceptance of responsibility, as provided in section 3E1.1. He bases his claim for a deduction upon his trial counsel's concession that Jones was guilty of bank larceny,

the only offense for which he was actually convicted.

Section 3E1.1 directs the district court to reduce the offense level by two levels "[i]f the defendant *clearly* demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct," Sentencing Guidelines § 3E1.1(a) (emphasis added), but cautions that "[a] defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right," *id.* § 3E1.1(c). Thus, even if Jones' concession of guilt is the equivalent of a guilty plea, Jones is still not entitled to an automatic deduction. Rather, the commentary refers the district court to a number of factors, including, but not limited to:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

*Id.* § 3E1.1 commentary.

Jones cannot avail himself of these factors in support of his claim for a deduction. The district court noted at the sentencing hearing that Jones did not voluntarily terminate or withdraw from his criminal conduct nor did he surrender to authorities; rather, he took flight and was apprehended and subdued only after a several-block chase and a several-minute struggle with law enforcement officers. He made no admissions to law enforcement authorities; instead, he first refused to give any name at all, then gave a false

name. He did not freely relinquish the demand note, an "instrumentality of the crime," which had to be pried from his fingers. The court also concluded that Jones' concession that he was guilty of the less serious offense of bank larceny was a "trial tactic." Given the overwhelming evidence against Jones, plus his two prior convictions for bank-related offenses, we do not regard as clearly erroneous the court's finding that the concession was strategic. *See United States v. Spraggins,* 868 F.2d 1541, 1543 (11th Cir.1989) (per curiam) (holding not clearly erroneous a district court's finding that a confession constituted an attempt to avoid lengthy sentence rather than an acceptance of responsibility). Even if we take Jones' concession as manifesting an acceptance of responsibility, rather than as a "trial tactic," that concession was not timely; it did not come until the trial, two and one-half months after the offense.

In addition to the above findings, which relate to factors specifically listed in the commentary, the district court found that Jones showed no remorse whatsoever. On the basis of a letter from Jones' parents to the court, the district court also found that Jones continued to maintain that, at the time of his arrest, he was walking to the United States Marshals' Office to surrender. The court regarded this assertion as highly implausible and concluded that Jones had still not faced up to what he had done.

The commentary to section 3E1.1 emphasizes that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility"; therefore, the judge's "determination ... is entitled to great deference on review and should not be disturbed unless it is without foundation." *See also Spraggins,* 868 F.2d at 1543. The district court's findings on acceptance of responsibility are not clearly erroneous. Indeed, there is ample foundation for those findings, and this court will not disturb them.

### D.

▮ In his final challenge to the district court's factual findings, Jones contends

that the court wrongly determined that his two prior sentences were for unrelated offenses. If the prior sentences (each exceeding one year and one month) involved "related cases," Jones should have received a total of three "criminal history" points under sections 4A1.1(a) and 4A1.2(a)(2) rather than a total of six points for two unrelated prior sentences under the same sections. A three-point total would have placed Jones in Criminal History Category II, whereas the six-point total placed him in Category III. *See* Sentencing Guidelines Ch. 5, Pt. A sentencing tbl.

The commentary to section 4A1.2 defines cases as related "if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." Tracking this definition, Jones asserts that his robbery of one Orlando bank and his attempted robbery of another (1) occurred on a single occasion because they were separated by a "scant one and one-half hours"; (2) were part of a single common scheme or plan because the *modi operandi* were virtually identical; and (3) were consolidated into one case for the purpose of sentencing because his two sentences were to run concurrently. With respect to (1) and (2), the district court observed that the two incidents in question were temporally distinct and involved two different banks and two different tellers as victims. We do not believe that the court was clearly erroneous in finding that the two offenses did not occur on a single occasion and that they were not part of a single common scheme or plan. With respect to (3), the district court observed that the offenses had led to different trials and different sentences. We do not believe the court was clearly erroneous in concluding that the cases were not "consolidated for sentencing" merely because the sentence imposed for one offense was made to run concurrently with the sentence imposed for the other offense.

### II.

Jones also contends that the district court erred in imposing a sentence with a

guideline range that exceeds twenty-four months without stating its reasons as required by 18 U.S.C. § 3553(c)(1) (1988). Jones misreads the statute, which provides that "[t]he court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—(1) is [imposed under the guidelines and the applicable] *range* exceeds 24 months, the reason for imposing a sentence at a particular point within the range." *Id.* (emphasis added). The applicable sentencing range for a defendant in Criminal History Category III with an offense level of fifteen is from twenty-four to thirty months. *See* Sentencing Guidelines Ch. 5, Pt. A sentencing tbl. Although Jones received a sentence in excess of twenty-four months, the sentencing range is only six months, and section 3553(c)(1) does not apply.

### III.

██ We note that this appeal could have been avoided if the court, after pronouncing sentence, had asked counsel whether there were any objections—to the sentence or to the manner in which the court pronounced it—other than those previously stated for the record. If appellant voiced no objections, he would have waived the points he presents in this appeal. To ensure in future cases that all objections are raised in the trial court and that the ground for each objection is clearly stated, we now exercise our supervisory power over the district courts, *see Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 638 (1973); *McNabb v. United States,* 318 U.S. 332, 340, 63 S.Ct. 608, 613, 87 L.Ed. 819 (1943), and instruct the district courts to elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of fact and conclusions of law.

In this circuit, the pre-sentence investigation report, prepared by a United States probation officer, serves a function similar to that of a pre-trial stipulation in a civil trial: it "establish[es] the factual and legal backdrop for the sentencing hearing," *United States v. Wise,* 881 F.2d 970, 972

(11th Cir.1989). After the report is prepared, the parties have the opportunity to object to the probation officer's recitals of fact and recommended guideline applications; the probation officer then reviews these objections, amends the report to the extent he deems necessary, and sets forth in an addendum to the report any disputes that remain unresolved. *See* Committee on the Admin. of the Probation Sys., Judicial Conference of the U.S., Recommended Procedures for Guideline Sentencing and Commentary: Model Local Rule for Guideline Sentencing, *reprinted in* T. Hutchison & D. Yellen, Federal Sentencing Law and Practice app. 8, at 431, 433 (1989); *Wise,* 881 F.2d at 972. At the sentencing hearing, the court, after engaging in a colloquy with both the prosecution and the defense, resolves all factual and legal disputes raised in the addendum. *Wise,* 881 F.2d at 972.

The addendum cannot serve, however, to limit the objections cognizable on appeal, because it does not take into account what transpires at the sentencing hearing itself. For example, the district court might not adopt as its own findings of fact the facts recited in the report or apply the guidelines in the manner proposed; furthermore, new causes for objection, which the parties could not reasonably have anticipated, may arise during the hearing or during the imposition of sentence. Therefore, the district court must give the parties an opportunity not only to resolve the objections contained in the addendum, but also—after the court states its factual findings, applies the guidelines, and imposes sentence—to object to the district court's ultimate findings of fact and conclusions of law and to the manner in which the sentence is pronounced. This will serve the dual purpose of permitting the district court to correct on the spot any error it may have made and of guiding appellate review.

The district court should also elicit from counsel an articulation of the grounds on which the objection is based. Clear articulation will aid the district court in correcting any error, tell the appellate court precisely which objections have been preserved and which have been waived, and

enable the appellate court to apply the proper standard of review to those preserved. For example, assume that the district court, in fashioning the sentence, states a factual finding and counsel objects. Counsel might be objecting that the finding lacks evidentiary support, in which case this court would apply the "clearly erroneous" standard. Or counsel might be objecting that some of the evidence supporting the finding should not have been considered by the court, i.e., that the evidence was inadmissible for the purpose of sentencing. In that case, this court's review would be de novo. Clearly articulated objections in such a case would thus apprise the district court of the need to identify for the record the evidence upon which it relied in making its factual finding: if the district court explains that it did not rely on the inadmissible evidence but on other, properly considered evidence, this court would know that the more deferential, "clearly erroneous" standard of review is appropriate.

 Where the district court has not elicited fully articulated objections following the imposition of sentence, this court will vacate the sentence and remand for further sentencing in order to give the parties an opportunity to raise and explain their objections. Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice. The procedure that we announce today is to be followed for all sentences imposed after the expiration of one hundred and twenty days following the date of this opinion.

## IV.

In the current case, this court has entertained appellant's claims and has found them to be without merit. The sentence imposed by the district court is accordingly

AFFIRMED.

EDMONDSON, Circuit Judge, concurring:

I concur in the court's judgment and in its opinion, except part III. In part III, today's court creates a detailed procedural guideline—to be enforced by remands—about how district courts are to handle sentencing hearings. The procedure described in part III may well be a good practice, but I distrust such judicially created guidelines that are to govern in the future cases of a certain kind. The adjudicating process is poorly suited for sweeping pronouncements. And I think that, when we dictate too much to district courts, we lose the benefit of creativity that different district judges working independently can bring to solving a problem.

Justice Harlan summed up my view on guideline decisions when he wrote this:

I seriously doubt the wisdom of these "guideline" decisions. They suffer the danger of pitfalls that usually go with judging in a vacuum. However carefully written, they are apt in their application to carry unintended consequences which once accomplished are not always easy to repair. Rules respecting matters daily arising in the federal courts are ultimately likely to find more solid formulation if left to focused adjudication on a case-by-case basis, or to the normal rule-making processes of the Judicial Conference, rather than to *ex cathedra* pronouncements by this Court, which is remote from the arena.

In dealing with cases of this type, I think we do better to confine ourselves to the particular issues presented....

*Sanders v. United States,* 373 U.S. 1, 32, 83 S.Ct. 1068, 1085–86, 10 L.Ed.2d 148 (1963) (Harlan, J., dissenting).