UNITED STATES of America, Plaintiff,

v.

Chaiwat MONTGOMERY, Defendant.

No. 93–346–CR.

United States District Court,
S.D. Florida.

July 11, 1994.

Asst. U.S. Atty. Orlando Prescott, Miami, FL, for plaintiff.

Jeffrey Weiner, Miami, FL, for defendant.

## AMENDED ORDER

MARCUS, District Judge.

THIS CAUSE comes before the Court upon the sentencing of the Defendant Chaiwat Montgomery. The difficult issue presented in this sentencing is whether the Defendant is a "career offender" under section 4B1.1 of the Sentencing Guidelines. The outcome to this issue is of great importance as the sentence imposed upon the Defendant under the "career offender" provision of the Guidelines would increase the sentence imposed upon the Defendant in this case approximately two-fold. At a hearing on April 5, 1994, this Court directed the parties to more fully brief the possible applicability of the career offender provision to the facts of this case. Both parties submitted briefs on this issue and oral argument was taken at an additional hearing on April 25, 1994. After a thorough review of the pleadings, the arguments presented, and the case law on the subject, we are constrained to conclude that the Defendant is a "career offender" under section 4B1.1 of the Sentencing Guidelines.

### I.

The Defendant is presently before the Court for sentencing after a jury found him guilty on October 13, 1993, of armed bank robbery under 18 U.S.C. § 2113(d) and possession of a firearm during and in relation to a crime of violence under 18 U.S.C. § 924(c)(1). The evidence presented at that trial revealed that on November 17, 1992, the Defendant entered a branch of the First Union Bank in Miami Lakes holding a firearm and stated: "This is a holdup, give me the money." The Defendant then vaulted the teller counter, pointed the handgun at the bank employees, and demanded money. The Defendant robbed the bank of approximately $24,000.

The Defendant's criminal history predating his October, 1993, conviction is also relevant to the sentencing issues briefed by the parties. Before he was eighteen, the Defendant was arrested four times for charges including aggravated assault, attempted solicitation (a second degree felony), possession of burglary tools, grand theft vehicle, and loitering and prowling. The cases were all disposed of either through non-judicial action or community control supervision and we cannot and do not consider them now.

After reaching the age of eighteen—and before committing the armed bank robbery for which Montgomery is being sentenced today—the Defendant committed two additional armed bank robberies. On August 15, 1988, the Defendant committed a bank robbery of the Florida Food Industry Credit Union, located at 6073 N.W. 167th Street, Miami, Florida. The evidence shows that the Defendant and another individual entered the credit union with guns in hand and approached two tellers/victims at the counter. The Defendant pointed his firearm at the second teller and handed her a note that stated: "Don't push the panic button, I have a gun, put the money in the bag." In combination with another, the Defendant got money from the tellers and subsequently fled in a car. The evidence showed that the Defendant (along with the other perpetrator) took $6,582.94 from the credit union. The investigators involved in this crime were members of the Metro Dade Police Department.

On August 22, 1988, the Defendant committed a *second set* of armed bank robberies in as many weeks—this time from (1) Statesman's Bank for Savings and (2) Glendale Federal Savings & Loan, both located in Miami. As to the first bank robbery on that day, the Defendant entered the Statesman's Bank for Savings with another individual with a firearm and paper bags to give to the separate tellers to place money. After getting money from the tellers and fleeing in a getaway vehicle, a red dye packet exploded ruining a large portion of the money taken. Later that day, the Defendant and another individual entered Glendale Federal with the same weapons and apparently with more brown paper bags. Very shortly after taking money from another set of tellers, once again a red dye packet exploded ruining the money taken—Montgomery dropped the money and continued to flee. These bank robberies were investigated by the Federal Bureau of Investigation.

After being taken into custody, the Defendant went along two separate tracks in terms of the prosecution of the different sets of crimes. The armed bank robbery committed on August 15, 1988, was prosecuted in the Florida state court system. The Defendant pled guilty to the charges of robbery with a firearm, attempted robbery with a firearm, carrying a concealed firearm, and grand theft third degree before Judge Arthur Rothenberg of the Circuit Court of Dade County, Florida. On *April 25, 1989,* Judge Rothenberg sentenced Montgomery to *fifty-two months* in prison. The two armed bank robberies committed on August 22, 1988, however, were prosecuted in the federal court system. The Defendant pled guilty to those charges of armed bank robbery. On *March 27, 1989,* Judge William Hoeveler of the United States District Court for the Southern District of Florida, sentenced the Defendant to *forty-six months* in prison and four years supervised release.

Neither Judge Rothenberg nor Judge Hoeveler entered concurrent sentences for the two sets of crimes. However, subsequently, on April 4, 1990, approximately one year later, Judge Rothenberg entered an order making the state sentence run concurrently with the federal sentence. Up until that point, the Defendant had been serving time in the state penal system. Judge Hoeveler entered an order early in 1990 in which he corrected the federal sentence to allow it to run concurrently with the state sentence. At that point, the state court relinquished jurisdiction over the Defendant to the federal penal system. The Defendant served out his sentence in the federal penal system.

## II.

The difficult issue presented by the parties in this case is whether Defendant Montgomery is a "career offender" under section 4B1.1 of the Sentencing Guidelines. Under section 4B1.1, a defendant is a "career offender" if:

(1) the defendant was at least eighteen years old at the time of the instant offense,

(2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and

(3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. The parties agree that the Defendant here was at least eighteen years old at the time of the instant offense and that the crime of armed bank robbery under 18 U.S.C. § 2113(d) is a crime of violence for the purposes of the Sentencing Guidelines. Accordingly, whether the Defendant must be treated as a career offender turns on the third requirement: does Montgomery have at least two prior felony convictions of either a crime of violence or a controlled substance offense?

The Defendant challenges the government's assertion that Montgomery has two prior felony convictions. As the Eleventh Circuit has made clear, "[t]he prior convictions requirement is interpreted strictly: the defendant must have been sentenced twice in *unrelated* cases to classify as a career offender." *United States v. Delvecchio,* 920 F.2d 810 (11th Cir.1991) (emphasis added). Although conceding that he has been sentenced twice for crimes of violence, the Defendant

argues that those two sentences were "related" and, therefore, count as only one prior felony conviction under the Guidelines.

Section 4A1.2(a)(2) of the Guidelines addresses whether particular sentences are "related" for the purposes of the career offender provision. Specifically, Application Note 3 under section 4A1.2(a)(2) defines what constitutes "related cases":

> ... prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing.

In short, the government has the burden of showing that none of the three alternatives applies to the facts of this case. The parties agree that the two prior bank robberies did not occur on the same occasion, and therefore that the first of the three alternatives does not apply. The parties do disagree, however, as to the applicability of the latter two alternatives.

## A.

The Defendant argues first that the two prior convictions for bank robbery are "related" for the purposes of the Sentencing Guidelines because they "were part of a single common scheme or plan." The Eleventh Circuit has made clear that the determination of the applicability of the common scheme or plan requirement is extremely fact-based in nature. *United States v. Veteto,* 920 F.2d 823, 825 (11th Cir.1991). "Consequently, the district court's determination is not to be disturbed unless it is clearly erroneous." *Id.* Defendant argues that the two sets of 1988 bank robberies are part of the same scheme or plan because temporally the crimes were committed closely to one another, geographically the crimes were committed closely to one another, and the crimes were committed with the same *modus operandi.* The government essentially takes the opposite position to each of the Defendant's argument, stressing the dissimilarity of the crimes.

We conclude that the two sets of armed bank robberies that occurred in August of 1988 are not of the same common scheme or design as defined in binding case law. Particularly, we look to a closely similar case decided by the Eleventh Circuit in *United States v. Jones,* 899 F.2d 1097 (11th Cir. 1990). The facts in *Jones* were put concisely as follows:

> Jones conceded that he had two prior convictions, one for bank robbery and one for attempted bank robbery. The offenses underlying these convictions occurred on the same day. They involved two different banks in Orlando, Florida, and were [committed] approximately ninety minutes [apart].

*Id.* at 1099. In *Jones,* one of the issues discussed[1] was whether to classify Defendant as a career offender based on the two convictions arising from the two bank robberies. The Defendant argued that the two bank robberies were part of a single common scheme or plan because the *modi operandi* and timing of the crimes were virtually identical. The Eleventh Circuit rejected the Defendant's argument and observed:

> ... the district court observed that the two incidents in question were temporally distinct and involved two different banks and two different tellers as victims. We do not believe that the court was clearly erroneous in finding that the two offense did not occur on a single occasion and that they were not part of a single scheme or plan.

*Id.* at 1101. The facts underlying Montgomery's two sets of bank robberies are even more spatially removed from one another than the two allowed in *Jones.* First, the crimes were committed days apart from one another instead of hours as in *Jones.* Second, the crimes involved different banks and different victims. Third, the Defendant was sentenced by two different judges on different dates to different sentences. With such strong similarities between the facts of this

---

1. We note that the Eleventh Circuit, sitting *en banc,* overturned a separate holding in *Jones* that bank tellers are particularly susceptible to offenses of larceny and thus are vulnerable victims under section 3A1.1 of the Guidelines. *United* *States v. Morrill,* 984 F.2d 1136 (11th Cir.1993) (*en banc*) (holding that bank tellers, as a class, are not vulnerable victims under § 3A1.1). The portions that we are concerned with in this Order, however, remain the law of this Circuit.

case and that in *Jones*, and based on our review of the facts in this case, we are constrained to conclude and do find that the two sets of crimes were *not* part of a single common scheme or plan.

### B.

The Defendant also argues that the two prior convictions are "related" under the Guidelines because they were "consolidated" for sentencing. The Defendant makes essentially two arguments to support his position. First, the Defendant argues that if, hypothetically, his case had involved a sentencing proceeding under Rule 20 of the Federal Rules of Criminal Procedure,[2] then Eleventh Circuit precedent would mandate the result that the cases were "consolidated" for the purposes of the Guidelines. *See United States v. Dorsey*, 888 F.2d 79 (11th Cir.1989), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990). In *Dorsey*, the Court observed the following about the effect of a Rule 20 sentencing:

> In defining "related" cases, Application Note 3 states that cases are related if, among other things, they were "consolidated for trial or sentencing." Thus, Dorsey's 1982 sentences were treated as one, giving him a criminal history score of three, because under Rule 20 he was able to plead guilty and be sentenced simultaneously for the four bank robberies, even though they occurred separately and in two different states.

*Id.* at 80.

The Defendant argues that in this case there was no way for a Rule 20 proceeding to take place because one conviction was in the state court system and the other conviction was in the federal system. The Eleventh Circuit, however, has explicitly rejected an argument almost identical to that put forth by Montgomery. In *United States v. Veteto*, 920 F.2d 823 (11th Cir.1991), the defendant argued that the two sentences he received should have been considered "consolidated"

because "the only difference between *Dorsey* and the case at bar is that Dorsey's sentences were imposed by the same judge because he was able to take advantage of Rule 20(a)." *Id.* at 825 (citing *See Dorsey*, 888 F.2d at 80). The Eleventh Circuit rejected this position, observing:

> We have previously recognized that sentences are not necessarily "consolidated for sentencing" merely because they run concurrently, and that a district court's determination in this regard will not be disturbed unless it is clearly erroneous. *See Jones*, 899 F.2d at 1101. Veteto's sentences were imposed on different days by different judges. The sentences were imposed for different crimes committed on different days against different victims. Under these circumstances we cannot conclude that the district judge was clearly erroneous in determining that the crimes were not consolidated for sentencing.

*Veteto*, 920 F.2d at 826. In short, the Eleventh Circuit has rejected the Defendant's position to the extent that it simply asks us to look to the form of Rule 20(a) and analogize that situation to a case where a Rule 20 proceeding is unavailable. Instead, the evidence must indicate that functionally the sentences were consolidated for sentencing.

Realizing this fundamental point, the Defendant also makes the argument that functionally the two sentences were indeed "consolidated" by Judge Rothenberg and Judge Hoeveler under the Guidelines. In particular, the Defendant argues that both the state and federal armed bank robbery prosecutions were "resolved pursuant to a plea agreement and it was the intention of all parties involved that the two cases, state and federal were to be considered as one. Essentially there was a de facto consolidation." Def's Resp. at 12. The Defendant also argues that "[a]s a result of a guilty plea and with the implicit understanding of the attorneys *and judges* involved in both cases, [De-

---

**2.** Rule 20(a) provides, in relevant part:

> A defendant arrested, held, or present in a district other than that in which an indictment or information is pending against that defendant may state in writing a wish to plead guilty or nolo contendere, to waive trial in the dis-

> trict in which the indictment or information is pending, and to consent to disposition of the case in the district in which that defendant was arrested, held, or present, subject to the approval of the United States Attorney for each district.

fendant] received a federal sentence of 46 months." *Id.*

A thorough review of all the record evidence presented undercuts the theory of consolidation. As we detailed before, the sentences were issued by *different judges,* sitting in different fora, on *different dates* concerning *different crimes* and *victims.* Perhaps most notably, the two judges (one state, one federal) gave Montgomery *different* sentences in length—52 months in one instance and 46 months incarceration in the other. These factors all cut decidedly against any argument that the two convictions were "consolidated" under the Guidelines. It is true that the judges—one year after the original sentences—each entered orders that altered the state sentence to run concurrently with that of the federal sentence. However, it is clear under controlling Eleventh Circuit precedent that making the sentences run concurrently, in and of itself, is simply not enough to support a finding that the cases were "consolidated" for sentencing without more evidence. *Veteto,* 920 F.2d at 825–26. There is no support on the record for the proposition that the judges meant anything more in their subsequent orders than to make the sentences run concurrently.[3] Even if the two judges had made the two sentences run concurrently from the onset, and they did not, that would not have been sufficient on these facts to evidence "consolidation." There is no reason to believe any differently one year after the fact given all of the other evidence concerning the different sentences.

We are constrained to conclude under controlling precedent and an examination of the facts that the sets of crimes were not functionally consolidated for sentencing. This is not a Rule 20 setting. The sets of crimes involved different judges, acting in two different fora (state and federal) and who sentenced the Defendant on separate occasions for separate crimes occurring on different days, involving different victims, to different terms of imprisonment. Therefore, we conclude that the sentences were not "consolidated" under the Sentencing Guidelines.

**3.** At the Defendant's request, this Court postponed the Defendant's sentencing in this matter pending the receipt and review of the sentencing transcript from Judge Hoeveler's sentencing of

### III.

As the evidence on the record strongly indicates that the cases are *not* related for the purposes of section 4A1.2, we must reluctantly conclude that the Defendant is properly characterized as a "career offender" under section 4B1.1 of the Guidelines.

DONE AND ORDERED.

Defendant Montgomery on May 27, 1989. Nothing in the transcript alters the conclusion reached here.