[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
December 23, 2005
THOMAS K. KAHN
CLERK

No. 05-12541
Non-Argument Calendar

_____

D. C. Docket No. 04-20337-CR-JEM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARLOS BENHAMU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 23, 2005)

Before CARNES, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Carlos Benhamu appeals his sentence of 24 months' imprisonment, imposed

following his guilty pleas for two counts of bank fraud, in violation of 18 U.S.C. § 1344.  For the reasons that follow, we AFFIRM.

## I. Background

Benhamu owned B&B Group, Inc. ("B&B"), a cellular telephone distribution company.[1]  Benhamu operated B&B and controlled its financial and business activities.

In October 1998, B&B entered into a Loan and Security Agreement (the "Agreement") with HSBC Business Loans, Inc. ("HSBC"), an affiliate of HSBC Bank, a federally insured bank, whereby HSBC offered B&B a revolving line of credit.  Pursuant to the agreement, HSBC would release funds to B&B contingent on the company's posting of sufficient collateral.  B&B's accounts receivable constituted one form of collateral.  In signing the Agreement on B&B's behalf, Benhamu represented that the accounts receivable would be "genuine and enforceable."

Between February and May 2000, B&B submitted documents for eight

---

[1] The parties dispute whether Benhamu was the sole owner of B&B.  Although the Criminal Information states that Benhamu was a co-owner of B&B, the government stated that he was the owner, implying that Benhamu was the sole owner, when it set forth the facts it would offer as proof beyond a reasonable doubt of Benhamu's guilt during the plea colloquy. This fact also appears in the PSI.  As Benhamu failed to object to this fact at either the plea colloquy or in his objections to the PSI, he is deemed to have admitted it. United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005).

fictitious accounts receivable purportedly owed by customers in Brazil, with a total face value of $2.76 million. Based upon these invoices, HSBC advanced funds to B&B and increased its loan balance.

HSBC eventually noticed irregularities involving B&B's accounts receivable and ultimately concluded that the company had supplied false accounts receivable. Benhamu admitted, first to the bank and later to agents from the Federal Bureau of Investigation (the "FBI"), that he knowingly submitted the fictitious documents.[2]

Benhamu and HSBC entered into a settlement agreement, wherein Benhamu agreed to make cash payments to HSBC and authorized the bank to seize all available collateral on the loan account. Despite the payments, however, HSBC contends it was forced to write off approximately $1.8 million; the bank explained that $1.164 million of that amount was "unpaid principal." Eventually, Benhamu was indicted on two counts of bank fraud, in violation of 18 U.S.C. § 1344. He pleaded guilty to both.

The probation officer prepared a presentence investigation report ("PSI") using the Guidelines Manual for 1998, ultimately arriving at an offense level of 21.

---

[2] Benhamu explained why he submitted the false invoices by asserting that though the invoices were false, they represented legitimate sales to customers in Venezuela. He explained that the invoices named customers in Brazil so that he could evade receivable insurance credit limitations applying to sales to Venezuela. In an August 23, 2000 letter to Benhamu's counsel, however, HSBC stated that Benhamu had still failed to provide authentic shipping documents or invoices to support his explanation.

She first grouped both counts together and determined that the base offense level was 6 pursuant to U.S.S.G. § 2F1.1(a). She then added 12 levels because the amount of loss exceeded $1.5 million but was less than $2.5 million, see U.S.S.G. § 2F1.1(b)(7)(B), and then further increased the offense level to 24 because the offense affected a financial institution and Benhamu derived more than $1 million in gross receipts from the scheme. See U.S.S.G. § 2F1.1(b)(7)(B) ("If the offense . . . affected a financial institution and the defendant derived more than $1,000,000 in gross receipts from the offense, increase by 4 levels. If the resulting offense level is less than level 24, increase to level 24."). Finally, the probation officer subtracted three levels because Benhamu accepted responsibility, see U.S.S.G. § 3E1.1(a), and timely provided complete information to the government concerning his involvement in the offense or timely notified the government of his intention to enter a guilty plea. See U.S.S.G. § 3E1.1(b).

Given Benhamu's criminal history category of 1, the advisory guidelines range was 37 to 46 months' imprisonment. However, the probation officer noted several factors counseling a lesser sentence than the guidelines advised, including: (1) unlike many perpetrators of bank fraud, Benhamu did not intend to steal money from HSBC; (2) he derived no direct personal gain from the offense; (3) he ultimately cooperated with the victim in identifying the scheme; and (4) he

attempted to repay the victim prior to the government's involvement.

Although Benhamu pleaded guilty, at his plea colloquy, he disputed the amount of loss, asserting that his offense did not result in an actual loss. In addition, he argued that the district court should not include in the amount of loss calculation the interest that accrued once the loan was put on a non-accrual basis.

A witness for HSBC testified that the bank disbursed $2.2 million to Benhamu under the terms of the loan, which was the amount of loss the bank faced. Benhamu presented as a witness Marcie Bour, a certified fraud examiner, who calculated the amount owed both with and without interest and determined that, after the settlement, there was $477,931 in unpaid principal remaining. Bour testified that the maximum amount the bank advanced based on the fraudulent invoices was $2.2 million.

## II. Standard of Review

This Court reviews a district court's application of the guidelines de novo, reviewing findings of fact for clear error. United States v. Bracciale, 374 F.3d 998, 1004 (11th Cir. 2004).

## III. Discussion

### A. Amount of Loss

On appeal, Benhamu first argues that the district court incorrectly

5

determined the amount of loss because the court failed to resolve conflicting evidence about the amount and because he did not <u>individually</u> obtain more than one million in gross receipts, as required under U.S.S.G. § 2F1.1(b)(7)(B).  He contends that he did not, as an individual, obtain any of the loan money, as it all went to B&B and he obtained only a small salary. Benhamu also asserts that he was not the sole owner of B&B and that, therefore, only a portion of the loaned money can be attributed to him.  Furthermore, Benhamu argues that he did not waive this objection after the court pronounced sentence because, although defense counsel failed to renew his objections, the court's inquiry was insufficient under <u>United States v. Jones</u>, 899 F.2d 1997 (11th Cir. 1990).  Benhamu also contends that even if this Court applies a plain error standard, he is nevertheless entitled to resentencing.

After reviewing the record, we first conclude that Benhamu is the sole owner of B&B.  Second, we further conclude that Benhamu waived the argument that he must have <u>personally</u> received gross receipts in excess of one million dollars, rather than a corporation owned solely by him obtaining those funds, in order to qualify for a § 2F1.1(b)(7)(B) enhancement.  Although Benhamu objected to the relevant paragraph of the PSI on the basis that he "only received $96,000/year in salary from B&B's business," he failed to renew that objection after the court

pronounced his sentence. Accordingly, we review for plain error. United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002). "Plain error occurs where (1) there is an error; (2) that is plain or obvious; (3) affecting the defendant's substantial rights in that it was prejudicial and not harmless; and (4) that seriously affects the fairness, integrity or public reputation of the judicial proceedings." Id. at 566. As this Court has never addressed the question of whether, to qualify under § 2F1.1(b)(7)(B), a defendant must have derived more than $1,000,000 is gross receipts individually, rather than through a corporation, any error made by the district could would not be plain or obvious. See United States v. Humphrey, 164 F.3d 585, 587-88 (11th Cir. 1999).

Benhamu's argument that the district court failed to adequately inquire as to whether the defendant had any objections at the close of sentencing, as required by United States v. Jones, 899 F.2d 1097 (11th Cir. 1990), overruled on other grounds, United States v. Morrill, 984 F.2d 1136 (11th Cir. 1993), also fails. "Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice." Id. at 1103. Here, after the sentence was pronounced, the district court asked whether the

7

defendant or his counsel had any objection "to the Court's finding of fact or the manner in which sentence was pronounced," satisfying <u>Jones</u>.

As the minimum offense level applicable to a defendant under U.S.S.G. § 2F1.1(b)(7)(B) is 24, Benhamu's final offense level will be 21 regardless of whether the district court erred in determining the amount of loss. Accordingly, any error in the district court's calculation of the amount of loss would be harmless.

B. Request For Downward Departure

Benhamu next argues that the district court erred by failing to determine the specific loss amount because the figure was relevant to determining the appropriateness of a downward departure based on Benhamu's proffered ground that because of a miscalculation of the amount of loss, the guidelines overstated the severity of his offense. He contends that the fact that the district court failed to determine the amount of loss and did not base its variance from the guidelines range on Benhamu's proffered ground is evidence that the court erroneously believed it lacked the authority to depart on that ground. This argument must fail.

First, the record contains statements indicating that the district court understood that it had the authority to depart from the guidelines range. Second, the district court imposed a sentence that fell well below the applicable range.

8

The district court explicitly recognized that under U.S.S.G. § 2F1.1(b)(7)(B) the applicable base level would be 24 "no matter what," making a precise determination of the amount of loss unnecessary.

Benhamu's argument that the district court mistakenly believed that the guidelines range properly reflected the seriousness of the offense must also fail. The court heard Benhamu's explanation for his actions and considered the probation officer's comments concerning the differences between Benhamu's offense and the typical bank fraud. Nevertheless, the court concluded that a term of 24 months' imprisonment, half of which he recommended Benhamu spend in a half-way house, properly reflected the seriousness of the offense. The record lacks any evidence suggesting that the court's conclusion regarding the seriousness of Benhamu's offense relates in any way to the amount of loss, rather than to the fraudulent conduct itself.

Accordingly, we AFFIRM the district court.