[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 16, 2006
THOMAS K. KAHN
CLERK

No. 05-10677

D. C. Docket No. 04-00088 CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRIAN A. PUGH,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Florida

**(March 16, 2006)**

Before TJOFLAT and PRYOR, Circuit Judges, and GEORGE\*, District Judge.

---

\*Honorable Lloyd D. George, United States District Judge for the District of Nevada,
  sitting by designation.

PER CURIAM:

## BACKGROUND

On August 18, 1992, in the Southern District of West Virginia, Pugh was convicted on a plea of guilty to possession of firearm by a convicted felon, in violation of 18 U.S.C. § 924(g)(1), and sentenced to prison for a term of 92 months, to be followed by a three-year term of supervised release. On October 13, 1999, Pugh was released from prison and his term of supervised release commenced.

On September 12, 2002, a Southern District of West Virginia probation officer petitioned the district court to revoke Pugh's supervised release. The petition stated that Pugh had been arrested on September 9, 2002, by the Santa Rosa County, Florida sheriff's office for possession of a firearm by a convicted felon. The arresting officers discovered him riding on the passenger's seat of a vehicle driven by Thelma Holt. Holt told the officers that Pugh and an accomplice, Scott Bowers, who was in the back seat, had carjacked her and her automobile. It turned out that Pugh, Bowers and Holt were conspiring to rob a local business and that the officers interrupted their plan. The district court granted the petition and issued a warrant for Pugh's arrest.

2

On September 25, 2002, the court entered an order transferring jurisdiction of the case and Pugh's supervised release to the Northern District of Florida. The case was assigned to Chief Judge Roger Vinson, and given Case No. 02-00099-CR-3-RV.

On January 22, Judge Vinson entered a judgment in Case No. 02-00099-CR-3-RV, revoking Pugh's supervised release and sentencing him to prison for 21 months. Pugh appealed that judgment, Appeal No. 03-10588.

On November 19, 2002, while the petition for revocation of supervised release was pending in No. 02-00099-CR-3-RV, a Northern District of Florida grand jury indicted Pugh for possessing the firearm on September 9, 2002, as described in the petition, in violation of 18 U.S.C. §§ 922(g) and 924(c)(1)(C)(i). The indictment also charged him, in Count Two, with possession of ammunition on August 18, 2002, in violation of 18 U.S.C. §§ 924(g) and 924(c)(1(C)(i). This case was assigned to Chief Judge Vinson and given Case No. 02-00110-CR-3-RV.

Pugh entered a not guilty plea, and the case went to trial. The jury found Pugh guilty on both counts, and, on April 25, 2003, Judge Vinson sentenced him to consecutive prison terms of 120 months on Count One and 108 months on Count Two, for a total of 228 months. Pugh appealed his convictions and sentences. Appeal No. 03-12463.

The two appeals were consolidated, and on December 29, 2003, we affirmed the district court's revocation of supervised release, and Pugh's convictions on two counts for violating 18 U.S.C. §§ 922(g) and 924(c)(1)(C)(i), but we vacated the sentences imposed on those counts and remanded the case for resentencing. United States v. Pugh, Nos. 03-10588 and 03-12463 (11th Cir.) (not published).

On March 25, 2004, Judge Vinson resentenced Pugh in No. 02-00110-CR-3-RV, imposing consecutive prison terms of 120 months on Count One and 90 months on Count Two, for a total of 210 months. The court's judgment provided that the 210 months would be consecutive to the 21 months the court imposed after revoking Pugh's supervised release in the Southern District of West Virginia case.

**THE INSTANT CASE**

With this background in mind, we address the case before us, No. 05-10677. The indictment in this case was returned by a Northern District of Florida grand jury on August 17, 2004. In one count, the indictment alleged that on April 25, 2003, during the sentencing hearing in Case No. 02-00100-CR-3-RV, Pugh

> did knowingly and corruptly and by threats willfully endeavor to influence, intimidate and impede the due administration of justice in the matter of *United States v. Brian A. Pugh . . .* by threatening an officer of the court, United States Probation Officer Donna Easterling, in the discharge of her duty during a sentencing proceeding, in violation of [18 U.S.C. § 1503].

4

The case was assigned to Judge Lacey Collier. At arraignment, Pugh, represented by the Federal Public Defender's office, pled not guilty. Following the disposition of several motions Pugh filed pretrial, the case proceeded to trial before a jury on November 9, 2004.

The Government's proof established that Officer Easterling was the probation officer assigned to Pugh's case, that she interviewed him at the Rosa County jail, that she prepared the presentence investigation report (PSI) for the district court, which was adverse to Pugh, and that she was present at Pugh's sentencing hearing on April 25, 2003. The court reporter at the hearing, Warren Rayborn, observed the behavior that led to Pugh's indictment. He described that behavior; it occurred while Pugh's attorney, Stephen Sutherland, was presenting Pugh's objections to the PSI Officer Easterling had prepared for the court.

> A [Rayborn]. Pugh was standing – initially standing next to Mr. Sutherland.
> Q [Prosecutor]. Apparently Mr. Sutherland is making a number of objections during the course of the proceeding?
> A. Right.
> Q. And the [chief] judge is hearing argument and ruling on the objections?
> A. Yes.
> Q. Did there come a point in time when you observed something in the proceedings that you stopped the proceedings and called it to the attention of the chief judge?
> A. Yes, I did.
> Q. Tell me what you saw and what you did.

A. Mr. Pugh, through his counsel, stated that he would like to sit down, and the marshals brought him a chair, and they actually sat him down right where he was standing initially. And as Mr. Sutherland was going through his argument on one objection, which I don't remember which objection it was, but Mr. Pugh seemed very uncomfortable with the proceedings and very unhappy with what was going on. Ms. Easterling was sitting in the jury box at the time, the probation officer for Mr. Pugh. And he turns towards Ms. Easterling and with a clenched fist and a very rigid . . . index finger and pulled his finger across his throat looking at her and mouthed the words, 'You bitch,' not out loud, but I could read his lips. And that's – that's when I just – it kind of startled me. So I stood up and talked to Judge Vinson over the bench privately, just leaned over the bench and told him what I had seen. And Judge Vinson was obviously looking down at his paperwork and not looking at Mr. Pugh until I brought it to his attention, and that's when things stopped for a moment, and then we regrouped and continued.
. . .
Q. From looking at what you saw, did you perceive it as a threat to Ms. Easterling?
A. Yes, I did.

Part of the Government's evidence was the transcript of the exchange that took place between Judge Vinson and Pugh after Rayborn told the judge what he had observed. Here is part of that exchange.

THE DEFENDANT: I didn't threaten the probation officer.
THE COURT: What did you do then?
THE DEFENDANT: All I did was – I did do this (Indicating) motion, but I –
THE COURT: And you didn't mouth – you didn't mouth other words, like you bitch?
THE DEFENDANT:  No.
THE COURT: And what else?
THE DEFENDANT: Well, I did mouth those words, but –
THE COURT: What?

6

THE DEFENDANT: – I didn't threaten her.

The trial lasted one day. At the close of the Government's case in chief, Pugh moved the court for judgment of acquittal. The court postponed its ruling on the motion until it could hear argument of counsel. After hearing argument, the court denied the motion.

Pugh took the stand in his own defense; he was the sole defense witness. On a brief direct examination, he said did not intend to "threaten" Officer Easterling. On cross examination, in response to the question, "Did you look at Ms. Easterling during the sentencing . . . and make a threat slashing motion to your neck," Pugh said: "Yes sir, I looked at her, and I did make a motion. It wasn't with my finger. It was with my hand. . . . I said, 'This is a bitch, man.'"

The jury found Pugh guilty as charged, and on January 25, 2005, Judge Collier sentenced him to a prison term of 120 months, to be served consecutive to the sentences imposed in Case No. 02-00110-CR-3-RV. Pugh now appeals his conviction and sentence.

Pugh challenges his conviction on several grounds. He seeks a judgment of acquittal or the dismissal of his indictment on two grounds: (1) the evidence was insufficient to convict, and (2) he was subjected to "vindictive prosecution." As alternative relief, he seeks a new trial because (3) the district court abused its

discretion in denying his motion for change of venue; (4) the district court constructively amended the indictment; (5) the court abused its discretion in permitting the Government to introduce evidence of collateral offenses and bad acts pursuant to Fed. R. Evid. 404(b); (6) the court infringed his right against self-incrimination by allowing the Government to introduce statements he made, i.e., the portion of the transcript of the April 25, 2003 sentencing hearing set out above; (7) the court erred in denying his request to present the testimony of those present at the April 25, 2003 sentencing hearing, including Judge Vinson; (8) the court abused its discretion in denying his attorney's motion to withdraw and the appointment of substitute counsel; (9) the court erred in denying his motion to dismiss the case on the basis of the Government's failure to produce the "writ/detainer that caused [his] transfer . . . from the Middle District of Pennsylvania to the Northern District of Florida[1]; and (10) the court erred in denying his motion to dismiss due to the delay in bringing his case to trial.

Pugh challenges his sentence on these grounds: (11) the court abused its discretion in denying his request for a continuance of the sentencing hearing; (12) the Double Jeopardy Clause barred the court from imposing any sentence at all

---

[1] At the time the indictment in this case was returned, Pugh was incarcerated at FCI-Allenwood in Whitedeer, Pensylvania.

8

because a sentence would punish him for the conduct charged in Case No. 02-00110-CR-3-RV for which he had already been sentenced; and (13) the sentence he received is unreasonable.

After hearing oral argument and considering the parties' briefs, we affirm Pugh's conviction and sentence. Addressing his conviction, we find nothing in the record that supports the notion that Pugh was subjected to vindictive prosecution. Regarding the sufficiency of the evidence, it is clear to us that the jury was presented with enough probative evidence to find him guilty as charged. Pugh effectively admitted to Judge Vinson at the April 25, 2003 sentencing hearing and to the jury at trial that, looking straight at Officer Easterling, he made the slashing motion the court reporter described and uttered the word "bitch." All that the jury had to decide was whether his conduct was threatening to Easterling and whether he engaged it for the purpose alleged in the indictment. This was clearly a matter for the jury to decide.

In the light of the record, Pugh's grounds for a new trial are meritless. Only one ground merits comment, Pugh's argument that Judge Vinson was required to advise Pugh – before addressing and questioning him during the April 25, 2003 sentencing hearing – of his right to remain silent. Pugh contends that before asking him whether what the court reporter related to the court had

9

actually occurred, the court was required to inform him of his constitutional right to remain silent because it should have known that the elicited statements could incriminate Pugh.

Pugh challenged the admissibility of his responses to Judge Vinson in a pretrial motion to suppress. The Government's response was that it would not use Pugh's statements in its case in chief; rather, it would use them for impeachment if Pugh took the stand and contradicted what he told the judge. The court deferred ruling on the motion. At trial, Pugh contradicted his statements to Judge Vinson and the Government impeached him with the transcript of what he said to the court at the sentencing hearing. Pugh's counsel did not object. The impeachment was appropriate. See Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645, 28 L.Ed.2d 1 (1971).[2]

Turning to Pugh's attacks on his sentence, we find no reason for vacating the sentence and remanding the case for resentencing. Nothing in the record

---

[2] Pugh contends that, in allowing the statements to be used for impeachment, the court erred in two respects. First, the statements were involuntary and, thus, could not be used for impeachment. As far as we can tell, Pugh did not present the involuntariness issue to the district court in support of his motion to suppress. We find nothing in the record indicating that his responses to the court's questions were involuntary. He made them in the presence of his own attorney, who did not object to the court's questioning. Second, he contends that the court erred in not giving the jury a limiting instruction – that the statements could be considered for impeachment only, not as substantive evidence. Pugh did not request a limiting instruction; thus, to prevail on the point, he must demonstrate plain error – that is, that the court had a duty to instruct the jury on its own initiative. We find no case establishing such duty in circumstances such as these.

10

supports his claim that the court abused its discretion in not postponing the sentencing hearing. His double jeopardy claim is based on the notion that in sentencing him on remand in Case No. 02-00110-CR-3-RV, Judge Vinson enhanced Pugh's sentences for obstruction of justice in part because of the threats against Officer Easterling at the earlier sentencing hearing, on April 25, 2003. The additional acts that obstructed justice were that Pugh had threatened a Supervising Deputy U.S. Marshal; he testified falsely on 35 occasions at his trial; and he committed battery on his jail cellmate. We have great difficulty in discerning how Judge Vinson's inclusion of the threats against Easterling among the other acts of obstruction precluded Judge Collier from punishing Pugh for violating 18 U.S.C. § 1503. We therefore find no merit in Pugh's double jeopardy claim.

Pugh's final attack on his sentence appears to be two-fold. First, the district court committed clear error in determining the sentence range under the Guidelines. See United States v. Crawford, 407 F.3d 1174 (11th Cir. 2005). Alternatively, if the court did not commit clear error in this respect, the sentence it imposed is unreasonable because the court failed properly to consider the sentencing purposes listed in 18 U.S.C. § 3553(a). We find no clear error in the

11

court's determination of the sentence range, 110 to 137 months imprisonment.[3] The court explicitly treated the Guidelines as advisory and imposed a sentence of 120 months, a sentence that was both within the guideline range and the maximum that the law allows. After imposing sentence, the court elicited the parties' objections. After noting his previous objections, Pugh's counsel did not present the objection he makes here – that the court failed to consider the sentencing purposes of § 3553(a).

"Where the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice." United States v. Jones, 899 F.2d 1097, 1103 (11th Cir. 1990). The district court did not state on the record how the sentence it imposed satisfied the sentencing purposes listed in § 3553(a). We are aware of those purposes and are familiar with the sentencing record in this case – that is, everything in the record that relates to the § 3553(a) purposes – and we cannot say that Pugh's sentence is

---

[3] Pugh urged the court to "group" the offense in the instant case with the offenses in Case No. 02-00110-CR-3-JV and, after doing so, to impose a sentence of 18 months imprisonment consecutive to the 210 months of imprisonment imposed in that case, on March 25, 2004. Pugh contends that the court's failure to effect such grouping – in two separate cases that could not possibly have been tried together – constituted an erroneous application of the Guidelines. Pugh cites no authority for that proposition, and we find none.

unreasonable.  In that it is not unreasonable, affirming the sentence would not result in a manifest injustice.

AFFIRMED.