[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 27, 2010
JOHN LEY
CLERK

_____

No. 09-15680
Non-Argument Calendar

_____

D. C. Docket No. 09-20077-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAMON SANTOS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 27, 2010)

Before BLACK, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Ramon Santos appeals his convictions and the sentences imposed for

conspiracy to defraud Medicare and to commit health care fraud, health care fraud,

and obstruction of justice. After a thorough review of the record, we affirm the convictions but vacate and remand for resentencing.

I. Background

Santos was charged by superseding indictment with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Counts 1 and 13), health care fraud, in violation of 18 U.S.C. § 1347 (Counts 2 through 12 and 14 through 23), and obstruction of justice, in violation of 18 U.S.C. § 1503 (Count 24).

The evidence at trial established the following: Ana Fonseca and Felix Calas opened Better Health Consulting Clinic Corporation in 2004. Through a friend, Fonseca met Santos, who showed her a copy of his physician's assistant ("PA") license and was hired as a PA at the clinic.[1] In his role as PA, Santos altered blood-work results so that the clinic could bill Medicare for treatments that had not been performed.

As part of the scheme, patients would come to the clinic, provide their Medicare information, and be seen by Santos. Santos gave the patients infusions of vitamins B1, B6, and B12 but billed Medicare for more expensive treatments. Monica Mulet, a medical assistant at Better Health, testified that Santos would tell her what medicines to put in the infusion bags. When the medical director was not

_____

[1] A physician's assistant is a health care professional licensed to practice medicine under the supervision of a licensed physician.

2

there, Santos would see patients, complete paperwork, and write in the medical files.

In 2005, Fonseca and Otto Hevia opened Mitto Health Center and hired Santos and Carlos Madrigal as PAs. Santos conducted physical exams and completed the billing paperwork. Santos and Madrigal provided infusions of vitamins B1, B6, and B12 to patients. Madrigal observed Santos write in patient charts and fill out billing paperwork, sometimes for medications the patients were not given. Mitto's medical director, De Quesada, had no doubt that Santos was a PA and he believed he had seen Santos's PA license.

In June 2006, federal agents served Better Health and Mitto with subpoenas for patient records. Fonseca planned to close the clinic as a result, but Santos told her he would get the records in order. Over the next few weeks, Santos replaced pages in patient charts with fake test results. Santos also signed bills and forged the medical directors' signatures on patient charts. When interviewed by the FBI, De Quesada confirmed that the claims made to Medicare included medications he had not used or with which he was not familiar. When the FBI reviewed medical records and patient files, they found charges for tests at Miami Technology Diagnostic Center on dates after the center had closed. They also uncovered bills for a patient who had died before the listed dates of treatment. The FBI also

3

confirmed that Santos had not received a license as a PA. The investigation

revealed that Better Health had spent $15,000 on medications, for which it billed

Medicare $11 million, and that Mitto had spent between $3,000 and $4,000 on

medications, for which it billed $1 million.

Santos testified in his own defense with the assistance of a translator. He

denied that he had held himself out to be a PA or that he had shown Fonseca or

De Quesada a PA license. He stated that he was hired to work as a medical

assistant.[2] He admitted that he had given infusions while at Mitto but stated that he

had done so under the doctor's direction. He denied falsifying documents or

participating in the fraud at either clinic.

The jury convicted Santos on one count of conspiracy to commit health care

fraud, five counts of health care fraud, and one count of obstruction of justice. He

was acquitted on the remaining counts. After determining that the sentencing

guideline range was 108 to 135 months' imprisonment, the court sentenced Santos

to 108 months' imprisonment.

On appeal, Santos argues that (1) he was denied a fair trial due to errors in

the translation and jury instructions; (2) the district court improperly calculated his

guideline range; (3) the district court improperly conducted the sentencing hearing

---

[2] A medical assistant is a healthcare worker who performs administrative and clerical tasks
and who is not authorized to conduct physical exams or order tests.

and failed to permit him to allocute; and (4) his sentence is unreasonable in light of the sentences his co-conspirators received. We address each in turn.

A. Fair Trial[3]

Generally, we review the legality of a jury instruction *de novo*, but we defer to the district court on the specific phrasing of an instruction, absent an abuse of discretion. *United States v. Prather*, 205 F.3d 1265, 1270 (11th Cir. 2000). When the defendant fails to object at trial, we review the claim for plain error. *See id.* at 1271. Under the plain error standard, "there must be (1) an error, (2) that is plain, and (3) that affects substantial rights." *United States v. Williams*, 469 F.3d 963, 966 (11th Cir. 2006). If those conditions are met, we will "notice the error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotation omitted). "Before an error is subject to correction under the plain error rule, it must be plain under controlling precedent or in view of the unequivocally clear words of a statute or rule." *United States v. Lett*, 483 F.3d 782, 790 (11th Cir. 2007). Regarding the third prong of the plain error

---

[3] There is no merit to Santos's claim that the government improperly bolstered its witnesses' credibility. In rebuttal closing argument, the government responded to defense counsel's attack on the witnesses' credibility. *See United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984) ("The prosecutor did not place the credibility of his office behind his own witnesses. At most he merely attempted to rebut aspersions the defense had cast on those witnesses; he pointed out features of their own testimony that supported their credibility. He did not express personal opinions about the witnesses. Rather, he urged the jury to draw inferences and conclusions from the evidence produced at trial."). Such statements were not improper. *Id.*

analysis, the defendant bears the burden of establishing that the error affected the outcome of the proceedings below. *United States v. Curtis*, 400 F.3d 1334, 1336 (11th Cir. 2005).

### 1. Errors in the Translation

Under the Court Interpreters Act, the district court shall use an interpreter "if the district court determines that the defendant [or a witness]: (1) speaks only or primarily a language other than the English language; and (2) this fact inhibits their comprehension of the proceedings or communication with counsel or the presiding judicial officer." *United States v. Edouard*, 485 F.3d 1324, 1337 (11th Cir. 2007) (internal quotations omitted); *see also* 28 U.S.C. § 1827(d)(1). The Act further provides, "If any interpreter is unable to communicate effectively with the presiding judicial officer, the United States attorney, a party (including a defendant in a criminal case), or a witness, the presiding judicial officer shall dismiss such interpreter and obtain the services of another interpreter in accordance with this section." 28 U.S.C. § 1827(e)(1). In general, the appointment of an interpreter is a matter left to the district court's discretion. *Edouard*, 485 F.3d at 1337.

"[T]he general standard for the adequate translation of trial proceedings requires continuous word for word translation of everything relating to the trial . . . ." *United States v. Joshi*, 896 F.2d 1303, 1309 (11th Cir. 1990). Although

defendants have no constitutional "right" to flawless, word for word translations,

the goal is for interpreters to translate exactly what is said; courts should

discourage interpreters from "embellishing" or "summarizing" live testimony.

*United States v. Gomez*, 908 F.2d 809, 811 (11th Cir. 1990).

Here, during Santos's testimony, the following colloquy occurred:

| | |
|---|---|
| Q: | And did you tell him [Dr. De Quesada] that you were a physician's assistant? |
| A: | Medical assistant. I never told him physician's assistant. |
| Q: | You never showed him a license ever? |
| A: | As a medical assistant. |
| . . . . | |
| Q: | Sir, are you saying that you never showed him or Ana Maria Fonseca a license that said you were a physician's assistant, not a medical assistant? |
| A: | Medical Assistant. |
| Court: | Did you ever show Ana Fonseca or Dr. De Quesada a piece of paper saying you were a medical assistant? |
| A: | Medical assistant. |
| . . . . | |
| Court: | Did you ever take a piece of paper that said you were a licensed or authorized medical assistant and show it to Ana Fonseca. Did you ever do that? |
| A: | No. |
| Court: | Did you ever show such a piece of paper saying you were a medical assistant to Dr. De Quesada? |
| A: | I don't understand what it means, medical assistant or physician's assistant. I have to be very clear on this. Otherwise, I might get the wrong answer. |
| Court: | Did you ever show a piece of paper saying you were a medical assistant to Dr. De Quesada? |
| Counsel: | The question is a physician's assistant. That's the question. |
| Court: | No. I'm asking one and you are asking another. |
| . . . . | |

7

| Court: | You've got to clarify it. As long as we are talking one thing and he is talking something else, it's not fair to him or to you and the jury's – it's not fair to the jury. |
|---|---|
| Counsel: | Okay. |
| Court: | Did you show a document, piece of paper, saying you were a licensed medical assistant to the doctor . . . . |
| A: | No. |
| Court: | Now, then, did you ever show to Ana Fonseca a document saying you were a . . . physician's assistant? |
| A: | I am not a physician's assistant. I am a medical assistant. |
| Court: | Answer this question: Did you take a piece of paper that said you were a physician's assistant and show it to Ana Fonseca or the doctor in order to get the job? Did you ever do that? |
| A: | No. |

Following this line of questioning, Santos called Ana Shore, the chief interpreter for the Federal Public Defender's Officer. The court questioned the purpose of the testimony, and defense counsel explained that there was some confusion in the translations of physician's assistant and medical assistant during Santos's testimony.

The court excused the jury and asked the court translator, Guillermo Suquet, to take the stand. Suquet testified that when the court said medical assistant, he had translated it as physician assistant instead. The court concluded that the interpreter had not interpreted the question properly and that Santos could be confused by the questions. As a result, the parties stipulated that Santos had testified that he had never held himself out to be a PA.

Santos now argues that his trial was fundamentally unfair due to a

8

mistranslation during his testimony and that this unfairness requires his conviction be reversed. He contends that the district court erred when it did not permit him to proffer testimony on the mistranslation under the Court Interpreters Act, 28 U.S.C. § 1827. According to Santos, after the district court denied his request for a mistrial, the court failed to consider other corrective measures, leaving the jury confused on a crucial elements of the government's case. He disputes that the stipulation submitted to the jury alleviated that confusion. Because the government attached such significance to the question of whether Santos was a physician's assistant, Santos argues, the error in the translation could not have been harmless.

Santos now contends that the translator could not effectively communicate and that he should have been permitted to present evidence of the translator's mistake. Although the translator's confusion and likely error is troubling, a review of the record shows that the district court did not abuse its discretion by refusing to permit another translator to testify about the error. The parties stipulated that Santos denied holding himself out to be a physician's assistant, and this stipulation covered the purpose of the questions. Several witnesses testified that they knew Santos to be a physician's assistant. Santos denied this in his own testimony, and

the jury was free to determine which witnesses were more credible.[4] *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir.), *cert. denied*, 130 S.Ct. 561 (2009).

Even if the district court erred, the error was harmless. Santos's status as a physician's assistant or medical assistant was not crucial to the government's case. Santos was charged with conspiring to commit health care fraud, committing health care fraud, and obstructing justice. To convict Santos of conspiracy, the government needed to prove an agreement to engage in unlawful activity and an overt act committed in furtherance of that conspiracy. *United States v. Perkins*, 748 F.2d 1519, 1527 (11th Cir. 1984). To prove health care fraud, the government needed to prove that Santos knowingly and willfully executed a scheme to defraud a health-care benefit program in connection with delivery of or payment for health care. 18 U.S.C. § 1347. To prove Santos obstructed justice, the government needed to prove that Santos corruptly obstructed or impeded the due administration of justice. 18 U.S.C. § 1503.

The evidence at trial established that Santos and Fonseca agreed to alter blood work to bill Medicare for treatments not given to patients. Witnesses observed Santos making notes on the medical charts. Others saw Santos filling out

---

[4] Santos now argues that the translation could have affected the testimony of other Spanish-speaking witnesses. He raises this argument for the first time on appeal, however, and cannot show plain error because any error was harmless.

10

billing documents. In addition, Santos instructed others at the clinics what medications to put in the infusions, and Santos submitted bills for medications the clinic did not use. When the FBI began investigating the clinics, Santos arranged to alter the medical records to cover up the scheme. This evidence was sufficient to establish conspiracy, health care fraud, and obstruction.

None of these offenses depended on Santos's status as a physician's assistant. As a physician's assistant, Santos could be expected to see patients and write entries in charts. As a medical assistant, his role would have been limited to administrative and clerical work. Thus, if Santos had been a physician's assistant instead of a medical assistant, it simply would have made it easier for him to commit the crimes because his involvement with patients and billing would be expected. Because Santos's status was not relevant to the elements of the offenses, any error in the translation was harmless.

## 2. Jury Instructions

Santos next argues that the court committed multiple errors in instructing the jury. He contends that because the evidence was not overwhelming or even substantial, the cumulative effect of these errors requires that his convictions be reversed.

### a. Accomplice Instruction

11

Santos complains of the court's failure to give the following pattern

instruction on accomplices and witnesses testifying under plea agreements:

> The testimony of some witnesses must be considered with more
> caution than the testimony of other witnesses. For example, . . . a
> witness who hopes to gain more favorable treatment in his or her own
> case, may have a reason to make a false statement because the witness
> wants to strike a good bargain with the Government.
> . . . .
> In this case the Government called as one of its witnesses a person
> named as a co-Defendant in the indictment, with whom the
> Government has entered into a plea agreement providing for the
> possibility of a lesser sentence than the witness would otherwise be
> exposed to. Such plea bargaining, as it's called, has been approved as
> lawful and proper, and is expressly provided for in the rules of this
> Court. However, a witness who hopes to gain more favorable
> treatment may have a reason to make a false statement because the
> witness wants to strike a good bargain with the Government. So,
> while a witness of that kind may be entirely truthful when testifying,
> you should consider such testimony with more caution than the
> testimony of other witnesses. And, of course, the fact that a witness
> has pled guilty to the crime charged in the indictment is not evidence,
> in and of itself, of the guilt of any other person.

*See* Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Special Instruction

1.1, 1.2 (2003).

Because Santos did not challenge the jury instructions on this ground, we

review for plain error. *United States v. Wright*, 392 F.3d 1269, 1277 (11th Cir.

2004). "Jury instructions will not be reversed for plain error unless the charge,

considered as a whole, is so clearly erroneous as to result in a likelihood of a grave

miscarriage of justice, or the error seriously affects the fairness, integrity, or public

12

reputation of judicial proceedings." *United States v. Starke*, 62 F.3d 1374, 1380-81 (11th Cir. 1995) (internal quotations omitted).

District courts "have broad discretion in formulating jury instructions[,] provided that the charge as a whole accurately reflects the law and the facts, and we will not reverse a conviction on the basis of a jury charge unless the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process." *Prather*, 205 F.3d at 1270 (quotations omitted). District courts are not required to use the Eleventh Circuit Pattern Jury Instructions, and this court has repeatedly approved jury instructions that do not exactly track the language of the pattern instructions. *United States v. Veltmann*, 6 F.3d 1483, 1492 (11th Cir. 1993).

Here, there was no error in the district court's failure to give the accomplice instructions. The court instructed the jury that in deciding whether to believe a witness, it should consider whether the witness had a particular reason not to tell the truth or had a personal interest in the outcome of the case. As each co-conspirator testified, defense counsel was able to cross-examine the witness with respect to the plea agreement and possibility of a reduced sentence. During closing argument, defense counsel argued that the witnesses testified with the hopes of reducing their own sentences or with immunity from prosecution. Thus, the jury

was able to evaluate the credibility of the witnesses. And the instructions given by the court, when considered as a whole, informed the jury that it must evaluate the credibility of the witnesses and consider whether the witnesses stood to gain anything from their testimony. Thus, Santos has not shown that he was prejudiced by the failure to give these instructions or that the failure to give them seriously affected the fairness of the judicial process.

### b. Deliberate Ignorance

Santos contends that, given the lack of evidence of deliberate ignorance, the court erred in giving the instruction.

Following closing argument, the court instructed the jury that

> with respect to the issue of a defendant's knowledge in this case, if you find from all the evidence beyond a reasonable doubt that the Defendant believed he was participating in the offenses charged . . . and that he deliberately and consciously tried to avoid learning the purpose of the acts was to commit health care fraud, such deliberate avoidance of positive knowledge – you may treat such deliberate avoidance of positive knowledge as the equivalent of knowledge.

A deliberate ignorance instruction is warranted "only when . . . the facts . . . support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *United States v. Rivera*, 944 F.2d 1563, 1571 (11th Cir. 1991) (internal quotation

14

marks omitted). The district court should not "instruct the jury on 'deliberate ignorance' when the relevant evidence points only to actual knowledge, rather than deliberate avoidance." *Id.* Instructing the jury on deliberate ignorance is harmless error, however, where "the jury could have convicted on an alternative, sufficiently supported theory of actual knowledge." *United States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006); *United States v. Stone*, 9 F.3d 934, 937-38 (11th Cir. 1993).

Here, we conclude that any error in the instruction was harmless. Because the evidence was sufficient to prove Santos's actual knowledge, we will assume that the jury convicted on the basis of actual knowledge rather than deliberate ignorance.

### c. Unanimous Verdict

Santos argues that the district court erred by orally instructing the jury that it was required to return a verdict, which may have led the jurors to believe they had to compromise in reaching a verdict.[5] Because Santos did not object to the instructions on this ground, we review for plain error.

In this case, the court instructed,

Now the rest of you, the 12 of you have to unanimously agree on the verdict. Whatever the verdict is, you have to unanimously agree . . . . It is your duty as jurors to discuss the case with one another in an effort to reach agreement, if you can do so. Each of you must decide

---

[5] This error does not appear in the written instructions.

the case for yourself, but only after full consideration of the evidence with the other members of the jury. . . . While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind . . . . But do not give up your honest beliefs simply because others think differently or merely to get the case over with.

We presume that the jury followed the instructions. *United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996). Nothing in the court's charge would have misled the jurors into thinking they should compromise their view of the case. Therefore, Santos cannot show any error, plain or otherwise, in the court's instruction.[6]

B. Sentencing

In his objections to the calculation of the guideline range, Santos disputed the factual findings in the presentence investigation report, objected to the enhancement for his role in the offense, and requested a downward departure or a variance in order to avoid disparity in sentencing.[7]

1. Guideline Enhancement

---

[6] Santos also argues that the cumulative errors in his case require reversal. We disagree. "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." *United States v. Calderon*, 127 F.3d 1314, 1333 (11th Cir. 1997). Where, as here, there was only a single error in this case, there can be no cumulative error. *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004).

[7] Ana Fonseca was sentenced to 100 months' imprisonment and would likely receive a reduction based on her cooperation and testimony against Santos. Felix Calas was sentenced to 57 months' imprisonment, which was later reduced to 38 months. Otto Hevia was sentenced to 46 months' imprisonment.

16

We review a sentencing court's determination of a defendant's role in the crime for clear error. *United States v. Jennings*, 599 F.3d 1241, 1253 (11th Cir. 2010). We review a district court's application of the guidelines *de novo*. *United States v. Kinard*, 472 F.3d 1294, 1297 n.3 (11th Cir. 2006).

In determining Santos's guideline range, the probation officer recommended, relevant to this appeal, a three-level enhancement based on Santos's managerial role, U.S.S.G. § 3B1.1(b). Under U.S.S.G. § 3B1.1, a defendant receives a three-level increase in his offense level if "the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). The defendant must have been a manager or supervisor of "one or more other participants." *Id.* § 3B1.1(b), comment. (n.2). A "participant" is a "person who is criminally responsible for the commission of the offense, but need not have been convicted." *Id.* § 3B1.1(b), comment. (n.1); *United States v. Rendon*, 354 F.3d 1320, 1332 (11th Cir. 2003). To distinguish a leadership role from one of "mere management or supervision," the court should consider the following factors:

> (a) the exercise of decision making authority, (b) the nature of participation in the commission of the offense, (c) the recruitment of accomplices, (d) the claimed right to a larger share of the fruits of the crime, (e) the degree of participation in planning or organizing the offense, (f) the nature and scope of the illegal activity, and (g) the

17

degree of control and authority exercised over others.

*Jennings*, 599 F.3d at 1253; U.S.S.G. § 3B1.1(b), comment. (n.4).

Here, the testimony at trial showed that Santos saw patients and completed billing paperwork that was submitted to Medicare. He also performed infusions and instructed other employees what medications to put in the infusion bags. Under these facts, Santos played a large role in the fraud and exercised control or authority over at least one other participant in the clinics. He also organized the scheme to alter records once Fonseca learned that the FBI was investigating. Moreover, the scheme included at least five participants: Fonseca, Casal, Hevia, Madrigal, Mulet, and Santos. Thus, we conclude that the court properly applied the enhancement.

### 2. Factual Issues

Federal Rule of Criminal Procedure 32(i)(3) requires a district court at sentencing to make a determination as to a disputed fact in a PSI. Fed. R. Crim. P. 32(i)(3)(B). Our review of the record shows that, contrary to Santos's claim, the district court resolved the factual issues Santos raised at sentencing. Santos repeatedly objected to the factual elements of his offense, and, as the district court explained, these factual disputes were resolved by the jury at trial. The district court's statement was sufficient under Fed. R. Crim. P. 32(i)(3) to resolve the

disputed factual issue.

### 3. Allocution

Santos argues that the district court violated Fed. R. Crim. P. 32 when it failed to provide him an opportunity to allocute at sentencing and that this error requires reversal. "A sentencing issue not raised in the district court is reviewed for plain error." *United States v. Dorman*, 488 F.3d 936, 942 (11th Cir. 2007).

Under Rule 32, the sentencing court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). This requirement provides the defendant with an opportunity to personally plead for leniency and "to have that plea considered by the court in determining the appropriate sentence." *Dorman*, 488 F.3d at 942 (citation omitted).

Here, although the court considered Santos's arguments about his sentence, at no time did it offer Santos the opportunity to address the court. Thus, as the government concedes, the district court committed an error that is plain.

Moreover, the government states in its brief that "the error arguably affected Santos's substantial rights because there is the possibility (although surely not the probability) that had he been offered the chance to speak, the court might have imposed a below-Guidelines sentence." The government cites *United States v.*

*Prouty,* 303 F.3d 1249, 1251 (11th Cir. 2002), for this proposition.  Although we accept the concession made by the government that Santos satisfied the third prong of plain error review, it is important to acknowledge one argument the government did not make.

The government does not argue Santos failed to make a *Jones* objection regarding his failure to allocute.  *See United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990), *overruled on other grounds*, *United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993) (en banc).  In *Jones*, we held that "[w]here the district court has offered the opportunity to object and a party is silent or fails to state the grounds for objection, objections to the sentence will be waived for purposes of appeal, and this court will not entertain an appeal based upon such objections unless refusal to do so would result in manifest injustice."  *Id.*; *see also United States v. Rodriguez-Velasquez*, 132 F.3d 698, 700 (11th Cir. 1998) ("Once a defendant has waived his right to allocute by failing to raise it as a *Jones* objection, this court will remand for re-sentencing only if manifest injustice would result otherwise.").  At the sentencing hearing, the district court specifically asked Santos's counsel whether, "[u]nder *U.S. v. Jones*, other than the objections that have already been made . . . is there anything further by way of objection under *U.S. v. Jones* by the defense?"  Santos' counsel responded in the negative.  The

20

government does not argue that Santos waived his objection to the lack of an allocution and has forfeited its right to invoke this procedural rule. *See United States v. Lall*, 607 F.3d 1277, 1290 (11th Cir. 2010) (refusing to declare challenge to confession waived when the procedural rule was not invoked by the government).

### 4. Reasonableness

Finally, Santos argues that the sentence imposed is unreasonable because the court failed to consider the disparity with the sentences imposed on his co-conspirators.

Because we conclude that remand is required to enable Santos to allocute, we decline to address the reasonableness of the sentence at this time.

For the foregoing reasons, we AFFIRM Santos's convictions and remand for resentencing during which Santos is given the opportunity to allocute.

**AFFIRMED in part; VACATED and REMANDED in part.**