[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-12217
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cr-00425-CEH-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAIAS VILLA,
a.k.a. Fish,

Defendant-Appellant.

_____

Nos. 16-12222 & 16-13148
Non-Argument Calendar

_____

D.C. Docket No. 8:15-cr-00446-CEH-JSS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISAIAS VILLA,
a.k.a. Isaias Villa-Mondragon,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(June 12, 2017)

Before WILLIAM PRYOR, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Isaias Villa appeals his sentence of 262 months of imprisonment for conspiring to possess with intent to distribute 500 grams or more of methamphetamine, 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); reentering the United States illegally after being deported for an aggravated felony, 8 U.S.C. § 1326(a), (b)(2); and entering the United States illegally, *id.* §§ 1325(a), 1329. Villa contests being sentenced under the guideline for methamphetamine ice, a mixture containing a high concentration of methamphetamine, instead of the guideline for methamphetamine, and being found responsible for 4.5 kilograms of the stronger drug. Villa also contests the enhancement of his sentence for his role as a manager; the denial of his motion to depart downward; and the reasonableness of his sentence. We affirm.

2

The district court did not abuse its discretion when it sentenced Villa using the guideline for methamphetamine ice. Villa objected to the use of the purity level to calculate his base offense level, but he did not dispute that the drug was sufficiently pure to qualify as methamphetamine ice. *See United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004) ("The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing."). Villa argues that the purer form of methamphetamine does not warrant a harsher penalty because it is less dangerous, but the district court was not required to vary from the guideline based on Villa's policy disagreement with punishing methamphetamine more harshly than other drugs. *See United States v. Stratton*, 519 F.3d 1305, 1307 (11th Cir. 2008).

The district court did not clearly err in calculating the quantity of drugs attributable to Villa. Villa challenges the conversion of $75,000 of drug proceeds to a quantity of methamphetamine ice based on its price, but we need not address that argument because the amount attributed to Villa is supported by other evidence. Villa conceded that he was responsible for 1.6 to 1.7 kilograms of methamphetamine ice, and a witness for the government recounted testimony of coconspirator that she and a cohort received four kilograms of the drug from Villa, *see United States v. Wise*, 881 F.2d 970, 973 (11th Cir. 1989). The district court

3

made a reasonable estimate that Villa was responsible for more than 4.5 kilograms of methamphetamine ice.

Villa argues, for the first time, that the district court should have required the government to provide clear and convincing evidence of his drug activities, but this argument fails. Because Villa did not present his argument to the district court, we review for plain error, which requires that the error "must be plain under controlling precedent," *see United States v. Aguilar-Ibarra*, 740 F.3d 587, 592 (11th Cir. 2014). Our precedent holds that, "[w]hen a defendant challenges one of the factual bases of his sentence, the government must prove the disputed fact by a preponderance of the evidence." *Id.*  The district court did not plainly err.

The district court did not clearly err by finding that Villa was a manager of the conspiracy. A defendant is subject to a three-level increase in his base offense level if he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." United States Sentencing Guidelines Manual § 3B1.1(b) (Nov. 2015). Villa admitted exercising some degree of control over the conspiracy when he requested a two-level enhancement. *See United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). And his actions involved more than organization. *See* U.S.S.G. § 3B1.1(c). Villa disbursed methamphetamine ice and large amounts of cash to his wife, daughter, Thomas Kohler, Justin Duffey, and Miranda Chavez. In telephone

conversations that Villa made from jail, he discussed the delivery of a large quantity of cash with Kohler; directed his daughter to "run over children if necessary" to retrieve money and drugs; and instructed Chavez to threaten harm to persons who owed Villa money and to post bond for Kohler. Villa's involvement in the conspiracy warranted a three-level enhancement of his base offense level.

We cannot consider Villa's challenge to the district court's refusal to grant a downward departure from his criminal history category. Villa waived his request for a departure when, during sentencing, he "convert[ed] [his] argument [from a request for a departure to a request for] a variance." *See United States v. Horsfall*, 552 F.3d 1275, 1283–84 (11th Cir. 2008). Even if Villa had preserved the argument, the denial of his motion would be immune from review. We lack jurisdiction to review the denial of a downward departure when the district court knew it had authority to depart, *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005), which it did in this case.

The district court did not abuse its discretion when it sentenced Villa to concurrent sentences of 262 months for conspiring to distribute methamphetamine, 240 months for reentering the United States illegally, and 6 months for entering the country illegally. Villa, a native and citizen of Mexico, obtained status as a permanent resident in 1991, but in 2005, he was deported to his homeland after being convicted of child abuse and possessing methamphetamine. Two years later,

5

Villa reentered the United States illegally, and in 2013, he began distributing methamphetamine. In 2015, Villa was deported a second time after being arrested for giving a false name and date of birth to law enforcement, but his involvement in the drug trade continued with the assistance of his wife. Within a few months, he entered the United States illegally a second time to resume control of his trafficking operation, after which he managed to distribute more than 11 kilograms of methamphetamine ice and collect more than $100,000 in drug proceeds. With a total offense level of 38 and a criminal history of V, Villa faced an advisory sentencing range of 360 months to life, but the district court deemed that range too severe because Villa's drug activities stemmed from his desire to provide for his children and to satisfy his wife's greediness. The district court reasonably determined that a sentence of 262 months took into account Villa's history and his decision to plead guilty, yet provided an adequate penalty for his "very serious offense" involving a "highly addictive" drug and served to protect the public, deter Villa from committing future similar crimes, and promoted respect for the law. *See* 18 U.S.C. § 3553. Villa argues about a disparity between his sentence and that of his codefendants and other distributors of methamphetamine, but Villa is not substantially similar to the coconspirators who he managed nor can we gauge how his sentence compares to other distributors without evidence about those persons'

6

conduct and history, *see United States v. Hill*, 643 F.3d 807, 885 (11th Cir. 2011).

Villa's sentence is reasonable.

We **AFFIRM** Villa's sentence.