[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13968

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JUSTINA MARIA HOLLAND,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:20-cr-00086-RBD-EJK-1

_____

Before LUCK, LAGOA, AND TJOFLAT, Circuit Judges

PER CURIAM:

Justina Holland appeals her 96-month sentence imposed upon her conviction for 22 counts of various fraud offenses. She argues that the District Court erred when it applied a sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C) by failing to consider the totality of the scheme and engaging in impermissible double-counting. We disagree and affirm.

I.

In June 2020, a grand jury indicted Holland on 22 counts of fraud offenses related to fraud against her employer, public assistance fraud, and false use of a social security number. These charges included: 3 counts of mail fraud, in violation of 18 U.S.C. § 1341; 12 counts of wire fraud, in violation of 18 U.S.C. § 1343; 2 counts of access device fraud, in violation of 18 U.S.C. §§ 1029(a)(2), (b), (c)(1)(A)(ii) and 2; 2 counts of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and 2; 1 count of theft of government property, in violation of 18 U.S.C. §§ 641 and 2; and 2 counts of false use of a social security number, in violation of 42 U.S.C. §§ 408(a)(7)(B) and 2. Holland pleaded guilty to all 22 counts in the indictment without a plea agreement.

In the preparation of a presentence investigation report ("PSR"), a probation officer reported that, between March 2015 and

July 2018, Holland had obtained more than $1 million through her fraud schemes.  The schemes consisted of four parts:

1) Holland used her position as bookkeeper to embezzle over $300,000 from her employer, M.J., and his property rental business by diverting checks sent to the business, creating false invoices to receive unauthorized reimbursements, and manipulating the payroll system to receive unauthorized salary payments;

2) Holland made over $700,000 in unauthorized and fraudulent purchases using (a) M.J.'s American Express and Visa BB&T cards and (b) a Visa card she opened in M.J.'s name without his consent using his social security number; she paid those credit card bills by making unauthorized transfers from M.J.'s bank accounts;

3) Holland applied for, and received, food stamps after falsely representing, among other things, that she and her husband did not earn any income; and

4) Holland used her minor son's social security number to obtain financing to purchase a BMW and a Porsche.

In September 2014, victim M.J. hired Holland to be the bookkeeper[1] for his businesses, which included a property rental business and a hot tub business (collectively, "the businesses"). Her duties included paying bills, preparing spreadsheets and tax forms, collecting rent checks on the property rental business's properties, managing bank deposits related to the businesses, preparing M.J.'s monthly paycheck from the hot tub business, preparing financial information for the accountant, arranging M.J.'s travel, and preparing spreadsheets related to M.J.'s travel and expenses. Holland was also authorized to use M.J.'s American Express credit card to book his work-related travel but was not authorized to make personal purchases with the card.

---

[1] Holland objected to the PSR's description of her job title as "bookkeeper" in her objections to the PSR and during the sentencing hearing, claiming the title related to her objections to the enhancements for use of sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C) and abuse of a position of trust under U.S.S.G. § 3B1.3. She also claimed that M.J. employed another administrator who performed the duties for the hot tub business that Holland performed for the property rental business, and that Holland would work with this purported hot tub business administrator to compile information about the businesses' finances for M.J. M.J. testified at the sentencing hearing that he did not employ a separate bookkeeper for the hot tub business.

The Court overruled the objections related to Holland's job title, and she does not raise the issue of her title or her responsibilities to the hot tub business on appeal. The Court also found that the undisputed facts about the responsibilities of her position were sufficient to support the abuse-of-trust and sophisticated means enhancements regardless of her title.

To help conceal her conduct, Holland used interstate wires to send spreadsheets to M.J. that contained false financial information. She also submitted false invoices to receive unauthorized reimbursements by mail from the property rental business. In February 2018, M.J. was advised of issues with his credit when he considered purchasing a boat. In July 2018, M.J. confronted Holland, who admitted the embezzlement. M.J. subsequently fired Holland.

A. Misappropriation of the Property Rental Business's Funds

Holland used her position at M.J.'s business to embezzle over $300,000 from the property rental business. For example, she misappropriated approximately $151,522.20 from the property rental business by making unauthorized direct payroll deposits from the property rental business's bank accounts into her personal bank accounts.

Holland also misappropriated $59,301.89 by using false invoices to receive unauthorized payments from the IRA account that M.J. used to cover costs for some of the property rental business's properties. Generally, to pay for work done on these properties, an employee would submit an invoice for the work to the manager of the IRA, who would pay the invoice from the account. Holland would instead pay invoices using funds from one of M.J.'s credit cards or bank accounts and then submit the invoices to the manager of the IRA account for repayment. She would falsely represent that the invoice was due to be paid to her and request that the manager of the IRA issue her a check for the amount of the

invoice. The manager would send the checks by United States Mail or Federal Express. Holland would then deposit the check into one of her personal accounts.

Holland also abused her position to enable her and her family to live nearly rent-free on properties owned by the property rental business. Holland rented a property from M.J. for $1,100 per month, for which she was responsible for paying the rent and utilities. Yet after 2 years, Holland had only paid $2,600 in rent of the total $45,100 owed for the property. Holland also let her parents stay at one of the property rental business's properties for free. She then used the property rental business's bank account to pay for the utilities of both residences. Holland would represent to M.J. that she and her parents had paid rent on these properties by sending him spreadsheets with fictitious entries. This conduct caused $49,108.85 in losses.

Holland also abused her position to divert funds sent to M.J. or the property rental business. She deposited $110,359.10 in unauthorized funds into her bank accounts by diverting checks that were made payable to M.J. or the property rental business.

### B. Fraud Using Credit Cards

Holland used various credit cards and bank accounts to engage in approximately $750,000 of fraud. The majority of that amount came from Holland's use of M.J.'s American Express account. Holland made herself Card Master Administrator, giving her access to use the card for personal purchases. She made

$451,851.03 in unauthorized purchases for travel, retail, and entertainment.

To conceal these purchases, Holland manipulated the online statements using a feature offered by American Express online to omit purchases. As M.J. requested paper copies of his credit card statements, she would print the manipulated versions before sending them to him.

Holland also made unauthorized purchases on M.J.'s other personal and business credit cards. Holland made $81,033.75 in unauthorized purchases on the property rental business's BB&T Visa card for retail, entertainment, and travel. She also used several of M.J.'s personal and business bank accounts to pay $16,491.96 toward her personal Capital One credit card without his consent.

In addition, Holland diverted funds from M.J.'s personal BB&T account to open a Discover it Chrome Card. She then used funds from M.J.'s personal BB&T account to pay for $7,835.58 in purchases that she made using the Chrome Card. She also used the property rental business's Staples customer account number to make $4,163.63 in unauthorized purchases.

Holland also fraudulently opened a Disney VISA credit card at JP Morgan Chase using M.J.'s name, date of birth, and social security number without his consent. To conceal the credit card's existence and the purchases, Holland used her personal email address and mailing address to receive account statements and other account information. She made $196,578.60 in purchases using this

card.  Holland used six corporate accounts of the property rental business, several of M.J.'s personal bank accounts, and an unknown MasterCard to pay the balance owed on the Disney VISA credit card.[2]

### C. Public Assistance Fraud

Holland also fraudulently obtained public assistance through the Supplemental Nutrition Assistance Program (the "SNAP").  The Florida Department of Children and Families (the "DCF") administers SNAP benefits in Florida.  Holland first applied in April 2012, representing that she lived with her husband and their son.  She also represented that she and her husband were unemployed.  She thereafter submitted ten more applications that included the same representations.  She submitted the last such application in July 2016.  She also confirmed these representations were correct during several telephonic interviews with the DCF, and she provided incomplete documents to DCF investigators to thwart investigations into her eligibility.  She received $23,054 in SNAP benefits between May 2012 and August 2016.

The information Holland provided the DCF in her applications and during telephonic interviews contained several misrepresentations.  Her husband was not unemployed—he worked at a cell phone store from at least January 1, 2012, through April 15, 2016.

---

[2] The use of M.J.'s name and social security number qualified as aggravated identity theft, which was indicted as Count 17.

Holland was also not unemployed. She had another job between February 2014 and August 2014 before working for M.J.'s businesses between September 2014 and July 2018. And Holland failed to report that her husband was not residing with her during and/or subsequently to her reviews of eligibility dated July 14, 2014, and January 29, 2015. The public assistance fraud fell under Count 19 of the indictment for theft of government property.

### D. Fraud Related to Luxury Car Financing

In November 2015, because she had bad credit, Holland used her minor son's social security number to fraudulently apply for credit in connection with the purchase of a 2011 BMW 535. In May 2017, she used her son's social security number again to apply for credit to buy a 2010 Porsche. She also submitted a fabricated W-2 form that reported her 2016 wages as $115,000 in connection with her purchase of the Porsche. After fraudulently obtaining financing, she used the property rental business's BB&T account to make online payments for the cars.

The fraudulent use of her son's social security number fell under Counts 20 and 21—false use of a social security number— and Count 22—aggravated identity theft. The online payments she made using the property rental business's bank account on the cars fell under Count 12, a wire fraud count.

### II.

Holland fraudulently obtained over $1 million through the schemes described above. The probation officer stated in the PSR

that the total loss amount from Holland's schemes was $1,179,829.94. The total amount of restitution owed was $1,161,185.64.

The probation officer stated that U.S.S.G. § 2B1.1 addressed the offenses in Counts 1–16 and 18–21.[3] The probation officer stated that these counts were grouped for guideline calculation purposes because the total amount of harm or loss largely determines the offense level. The probation officer calculated a base offense level of seven for the conviction under § 2B1.1(a)(1). The probation officer then increased the offense level by 14 under § 2B1.1(b)(1)(H) because the loss amount was between $550,000 and $1,500,000.

The probation officer then applied a two-level enhancement under § 2B1.1(b)(10)(C) because the offenses involved sophisticated means. The probation officer based this finding on Holland's manipulation of the payroll system to receive additional salary payments and her attempts to conceal the fraud by diverting funds and creating false spreadsheets.

The probation officer added another two-level increase under U.S.S.G. § 2B1.1(b)(11)(C)(i) because the offense involved the unauthorized use of a means of identification to unlawfully obtain another means of identification. The probation officer also added

---

[3] These counts include all of Holland's charges except the two charges for aggravated identity theft under § 1028A (Counts 17 and 22).

21-13968               Opinion of the Court                    11

a two-level increase for abuse of a position of private trust to commit the offense under § 3B1.3.  The probation officer applied a two-level reduction for acceptance of responsibility under § 3E1.1(a) and a one-level reduction for assisting authorities in the prosecution by timely notifying authorities of her intent to enter a guilty plea under § 3E1.1(b).  The probation officer calculated Holland's total offense level as 24.

The probation officer also stated that Holland's two convictions for violating § 1028A required at least a two-year prison term imposed consecutively to any other term of imprisonment.  *See* § 1028A(a)(1), (b)(2).  The probation officer noted that the Court could impose the sentence for the two § 1028A convictions concurrently.  *See* § 1028A(b)(4).

Then, the probation officer reported that Holland's criminal convictions resulted in a total criminal history score of five and a criminal history category of III.  The probation officer concluded that the guideline imprisonment range was 63–78 months, with any terms of imprisonment for the aggravated identity theft convictions to be served consecutively.

In her memo to the probation officer, Holland objected to the sophisticated means enhancement under § 2B1.1(b)(10)(C).  She argued in her memo that using someone else's bank accounts and credit cards is not sophisticated enough to warrant the sophisticated means enhancement.  She also argued that she only used a basic QuickBooks program to manipulate the payroll system, and that a basic audit would have revealed the fraud.  Holland also

objected to the position of trust enhancement and to the loss amount. The probation officer considered Holland's objections but found them unpersuasive.

At the sentencing hearing, the District Court addressed Holland's objection to the application of the sophisticated means enhancement. Repeating the essence of her objection to the probation officer, Holland argued that M.J.'s property rental business was small and that the payroll programs she manipulated were not sophisticated. She also claimed the accounting department could have easily noticed her conduct. It "seems unusual," Holland argued, that someone like herself, "with limited education and no real financial background," could use sophisticated means to conceal fraud against a business that employed a full-time CPA.

Holland further argued that concealment is inherent in fraud, and that it would be arbitrary to apply the sophisticated means enhancement based on concealment alone. She added that the identity theft charges already covered her conduct related to opening accounts in others' names. Holland then claimed that much of the fraud could have been detected by a credit check or simple audit, as there were times when she was out of the office and the "books [were] open to anyone to review and double-check and to catch these losses as they were occurring." She last argued that her crimes were not as complex as the schemes the sentencing

guidelines use as examples in the application notes for the sophisticated means enhancement.[4]

Holland's arguments did not persuade the District Court. It found Holland's argument that "lack of vigilance on the part of the victim somehow impacts the appropriateness of the application of sophisticated means . . . entirely unpersuasive." Holland responded,

> [T]o clarify, for the record, it's not the defense's position that because some action wasn't taken by M.J. or M.J. Properties that it doesn't rise to the level of sophistication. It's the fact that these activities could have been easily discoverable, and it's not some difficult financial auditing that would have to basically trudge up the concealment. This is essentially surface-level concealment and nothing that would take a forensic auditor to dive in and discover what exactly is going on. And that was my point.

The Court responded, "And I characterize that as vigilance or lack of vigilance on the part of the fraud victim. You may disagree with

---

[4] *See* U.S.S.G. § 2B1.1 cmt. n.9(B) ("For purposes of subsection (b)(10)(C), 'sophisticated means' means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.").

the terminology that I used, but I think that's an appropriate summary of your argument."

The Court then added that, while the discoverability of a fraud scheme might be relevant in other situations, it found the offense involved sophisticated means based on the totality of the scheme.  The court explained:

> [M]y determination is that the duration of the fraud, the efforts of Ms. Holland to conceal the fraud, the number of different accesses of financial—accesses to financial information between manipulating the payroll, making efforts to cover up her fraud, utilizing credit cards, all of those things combined show a sophisticated fraudulent—show sophisticated fraudulent activity sufficient to warrant the enhancement. So the record will be clear, that's the basis for my ruling.

The District Court went on to overrule all of Holland's remaining objections.

The District Court sentenced Holland to a total prison term of 96 months.  The sentence consisted of 72 months on Counts 1 through 16 and Counts 18 through 21 to be served concurrently, followed by 24 months in prison on Counts 17 and 22 to be served concurrently with each other but consecutively to the other counts.  The District Court also imposed a three-year term of supervised release to follow her release from prison.  The District Court further ordered Holland to pay a total of $1,161,185.64 in restitution.

After imposing the sentence, the District Court elicited the parties' objections in accordance with Eleventh Circuit precedent. *See United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 984 F.2d 1136, 1137 (11th Cir. 1993) (en banc). Holland renewed her objections "raised in the PSR, going toward the procedural and substantive reasonableness of the sentence, the Court's weighing of the 3553(a) factors, and imposing a mid-to-high range sentence in her case."

### III.

On appeal, Holland first argues that the District Court procedurally erred when it applied the two-level sophisticated means enhancement. She argues that the Court failed to consider how easily detectable her scheme was and that she did not carry out the scheme in a sophisticated manner. In doing so, she claims the District Court failed to consider the totality of her scheme. She also argues that the Court mischaracterized her argument as blaming the victim for failing to detect the fraud and thus ignored her argument.

We cannot tell what exactly Holland is arguing. At points, the argument in her opening brief reads like a challenge to the District Court's interpretation of the sophisticated means enhancement and its finding that the guideline enhancement applied on the ground that the Court failed to adequately account for how easily discoverable the scheme was. Her statement of the issue asks: "Whether the district court erred in failing to consider the totality

of the scheme, including how easily detectable the fraudulent acts actually were, when determining whether to impose a two-level enhancement, pursuant to U.S.S.G. § 2B1.1(b)(10)(C), for committing the offenses by sophisticated means." Appellant's Brief at 2. The standard of review section then states that we review a district court's interpretation of the sentencing guidelines *de novo* and its finding that the defendant used sophisticated means for clear error. *Id.* at 10 (citing *United States v. Zaldivar*, 615 F.3d 1346, 1350 (11th Cir. 2010), *United States v. Feaster*, 798 F.3d 1374, 1380 (11th Cir. 2015)).

But in the argument section, the brief appears to pivot to claiming the District Court made a procedural error by refusing to adequately consider a material argument that defense counsel presented. *See* Fed. R. Crim. P. 32(i)(3)(B) (explaining that the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing"); *United States v. Wise*, 881 F.2d 970, 972 (11th Cir. 1989) (discussing how, at the sentencing hearing, "the court must resolve all factual and legal disputes raised in the addendum to the presentence report—as well as any other objections raised by the parties during the course of the hearing"). The brief states:

> [T]he district court procedurally erred in failing to consider defense counsel's argument that her fraud was easily detectable and was not carried out or

> concealed in any sophisticated manner. Instead, the district court mischaracterized defense counsel's position as "lack of vigilance" on the part of the victim, and refused to consider the argument, a procedural error.

Appellant's Brief at 12. The brief also states that "the relative ease with which a victim or law enforcement could have discovered the fraud is a relevant and necessary consideration." *Id.* at 13. But the brief does not cite any authority regarding a district court's duty to resolve material issues that the parties raise at sentencing.

Instead, the brief only cites our precedent about how to determine whether an offense involved sophisticated means. The brief points out that our Court instructs "the district court to consider all aspects of the criminal offense to judge how sophisticated the scheme, instead of focusing on the individual actions of the defendant." Appellant's Brief at 15 (citing *Feaster*, 798 F.3d at 1381). The brief then says the District Court made a procedural error because it "rejected that approach" by denying "Ms. Holland's request to consider whether or not the fraud was well concealed." Appellant's Brief at 15, 18.

The brief also attempts to distinguish between what factors support applying the enhancement, which it calls "substantive" rules, and the totality-of-the-scheme approach, which it calls a "procedural" rule. Appellant's Brief at 14–15. This distinction does not exist. Rather, there is a distinction between the legal standard a district court applies when considering whether to apply a

sentencing enhancement—which we review *de novo* for potential legal errors—and a district court's finding that an enhancement applies—which is a factual finding we review for clear error. *See Zaldivar*, 615 F.3d at 1350.

In addition, all the potential errors that Holland may be arguing are categorized as procedural errors. Refusing to consider a material issue is a procedural error, and legal and factual errors in applying sentencing enhancements involve errors in the calculation of the guidelines range, which are also categorized as procedural errors. *See Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) (listing types of procedural sentencing errors).

The totality-of-the-scheme approach—under which a district court considers whether the whole scheme was sophisticated even when each step was not—and the factors that support applying the enhancement are both parts of the legal standard a district court applies when considering the sophisticated means enhancement. *See United States v. Moran*, 778 F.3d 942, 977 (11th Cir. 2015). If Holland is claiming the District Court *rejected*—rather than *ignored*—an argument that the discoverability of a fraud scheme is a necessary consideration when applying the sophisticated means enhancement, then she is asserting a legal error that we would review *de novo*. *See Zaldivar*, 615 F.3d at 1350.

Based on the foregoing, Holland's first argument may be any one or more of the following: (1) the District Court improperly ignored a material issue she raised at sentencing; (2) the District Court made a legal error in its interpretation of the sophisticated

means enhancement; or (3) the District Court clearly erred in its determination that the offense involved sophisticated means. The Government interpreted the argument as only one that the District Court wholly ignored Holland's argument. *See* Appellee's Brief at 17–18. We need not decide which of the above arguments Holland made because, as explained *infra*, they all lack merit.

Holland also argues that the District Court impermissibly double counted by citing facts that other parts of the sentencing guidelines accounted for when it applied the sophisticated means enhancement. She argues that the Court's consideration of the duration of the offense overlaps with the loss amount because the longer the scheme, the greater the loss amount. She also argues that the position of trust enhancement already covered the harm related to her access to different financial instruments. And she claims fraud inherently requires concealment, so basing the sophisticated means enhancement on "any concealment"—which she claims the District Court did—leads to double counting that ignores the intent of the sentencing guidelines.

IV.

The Government argues that Holland forfeited both the claim that the District Court procedurally erred by ignoring her argument about the discoverability of the scheme and the claim that the District Court engaged in impermissible double-counting. Holland preserved claims that the District Court erred in its treatment of her arguments related to the discoverability of her schemes. But she did not preserve the double-counting claim.

To preserve a claim of error on appeal, a party must inform the court "of the action the party wishes to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b).  This objection must be sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought and "in such clear and simple language that the trial court may not misunderstand it." *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (internal quotation marks omitted).  To be preserved, the issue must have been decided, litigated, and explicitly resolved on the merits. *United States v. Pon*, 963 F.3d 1207, 1226 (11th Cir. 2020).  When a party raises a claim on appeal that she did not raise in the district court, we review for plain error only.  *United States v. Corbett*, 921 F.3d 1032, 1035 (11th Cir. 2019).

In her objections to the PSR, Holland objected to the application of the sophisticated means enhancement.  In her memo regarding the exceptions, she argued that a basic audit would have revealed the fraud, that she used an unsophisticated accounting program to pay herself, and that using another person's credit cards and bank accounts is not sophisticated enough to warrant the enhancement.  At the sentencing hearing, she reiterated these arguments.  She added that concealment is present in every fraud, and that opening and using accounts in others' names was accounted for in the identity theft charge.  The Court then considered and rejected her arguments.

Holland thus informed the Court of the action she wanted it to take: to consider the discoverability of her scheme as an important factor when applying the sophisticated means enhancement and to find the enhancement did not apply. *See* Fed. R. Crim P. 51(b). In doing so, she preserved a claim that the Court erred by finding her conduct involved sophisticated means. She also preserved a claim that the Court made a legal error by failing to factor in the discoverability of her scheme. Likewise, she preserved a claim that the Court improperly refused to consider her argument by mischaracterizing it.

But Holland did not preserve her double-counting claims. She makes three arguments that applying the sophisticated means enhancement involved double-counting: (1) concealment is inherent in fraud, so applying the enhancement based on "any concealment" double counted an inherent aspect of fraud; (2) considering her access to the financial instruments she used double-counted the conduct that the abuse-of-trust enhancement covered; and (3) considering the duration of the offense in applying the enhancement double-counts the loss amount because the longer the scheme lasts, the greater the loss amount.

Holland did not make any of these double-counting arguments in her objections to the PSR. She thus forfeited the double-counting issue, as she did not specifically ask the Court to consider those arguments at the sentencing hearing based on good cause. *See* Fed. R. Crim. P. 32(f)(1) (discussing how parties have 14 days to state written objections to the PSR); *see also United States v.*

*Edouard*, 485 F.3d 1324, 1351 (11th Cir. 2007) (discussing how, if good cause is shown, a district court has the discretion to alter the time limit for filing an objection or allow a party to make a new objection any time before imposing a sentence) (citing Fed. R. Crim. P. 32(b)(2), Fed. R. Crim. P. 32(i)(1)(D)).

Holland also failed to sufficiently apprise the Court of her double-counting theories at the sentencing hearing. During the hearing, she claimed it would be "arbitrary" to apply the sophisticated means enhancement based on "just concealment" because concealment is inherent in fraud. This argument is similar to her double-counting argument on appeal that the District Court double counted an inherent aspect of fraud by considering concealment alone as a reason to apply the sophisticated means enhancement. But at the hearing, she framed this argument as one against applying the sophisticated means enhancement based on her argument that the concealment strategies she used were not sophisticated enough to warrant the enhancement. She thus failed to apprise the Court of a double-counting claim on this theory. The Court also did not address her argument as a double-counting claim, and Holland needed to press the Court to do so to preserve the issue. *See Pon*, 963 F.3d at 1226.

Holland likewise failed to apprise the Court of her other two double-counting claims at the sentencing hearing. She objected separately to the application of the position of trust and sophisticated means enhancements. But she made no claim that applying both enhancements involved double-counting. She also did not

claim that the Court should not have taken the duration of the offense into account when it applied the sophisticated means enhancement, let alone raise an argument that doing so double-counted the loss amount.

So, Holland preserved arguments that the District Court erred by inadequately considering how discoverable the scheme was.  But she did not preserve any double-counting claims.

## V.

We review a district court's interpretation of a sentencing enhancement *de novo*, *Zaldivar*, 615 F.3d at 1350, and a district court's finding that the sophisticated means enhancement applied for clear error.  *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015).  Under clear error review, we "will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been committed."  *Id.* (internal quotation marks omitted).  The district court may base its factual findings on undisputed facts in the PSR.  *United States v. Beckles*, 565 F.3d 832, 843 (11th Cir. 2009).  "Facts contained in a [PSR] are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity."  *Id.* at 844 (internal quotation marks omitted).[5]

---

[5] Rule 32 is intended to "ensure that the district court can meaningfully exercise its sentencing authority based on a complete and accurate account of all relevant information," and the deadlines and procedures imposed by Rule 32(f) "are meant to facilitate this process by ensuring that the probation officer

Under U.S.S.G. § 2B1.1(b)(10)(C), a defendant's offense level is enhanced by two levels if the offense involved sophisticated means "and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." The commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id.* cmt. n.9(B). Examples of sophisticated means listed in the commentary include "hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts." *Id.* But the application notes do not contain an exhaustive list of the ways a defendant can use sophisticated means to conceal a crime. *Feaster*, 798 F.3d at 1380.

Section 2B1.1(b)(10)(C) was amended in 2015 to narrow the focus of the enhancement to the sophistication of the defendant's individual conduct rather than the scheme as a whole. *See United States v. Presendieu*, 880 F.3d 1228, 1248 (11th Cir. 2018). In gauging sophistication, the court must examine the totality of the defendant's "conduct as a whole, not on each individual step." *Moran*, 778 F.3d at 977. There is no requirement that each of the

---

has an adequate opportunity to investigate and resolve any potential inaccuracies in the PSR." *United States v. Aguilar-Ibarra*, 740 F.3d 587, 591 (11th Cir. 2014). And so, the "the law of this circuit [is] that a failure to object to allegations of fact in a PS[R] admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) (citing *United States v. Shelton*, 400 F.3d 1325, 1130 (11th Cir. 2005)); *see also United States v. Pilati*, 627 F.3d 1360, 1365 (11th Cir. 2010); *United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006).

defendant's individual actions be sophisticated. *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010). Use of "repetitive, coordinated conduct" to perpetuate and conceal a fraud scheme supports a sophisticated means enhancement. *United States v. Bane*, 720 F.3d 818, 826–27 (11th Cir. 2013). Further, the length of time for which the conduct is not detected, and the loss inflicted by the conduct can reflect on the sophistication of the scheme. *Feaster*, 798 F.3d at 1381.

We generally hold that using multiple accounts and making false documents to hide transactions can constitute sophisticated means under § 2B1.1(b)(10)(C). In *United States v. Clarke*, we held that the district court did not err by applying the sophisticated means enhancement when the defendant concealed the true extent of his income from the IRS by depositing income into church and credit union accounts not registered in his name, instructing the church to pay his personal creditors out of those accounts, and directing his employer to pay his insurance premiums on his behalf. 562 F.3d 1158, 1166 (11th Cir. 2009). In *United States v. Campbell*, we found the district court did not err by applying the sophisticated means enhancement when the defendant—a former mayor of Atlanta—used various campaign accounts and credit cards that were issued to other people to conceal transactions. 491 F.3d 1306, 1315–16 (11th Cir. 2007). And in *Feaster*, we found the district court did not err by applying the sophisticated means enhancement when a secretary at the Department of Veterans' Affairs (the "VA") made personal purchases on the VA's purchase card. 798 F.3d at 1376,

1381–82. To conceal her fraud, the secretary prepared fraudulent purchase orders, bought gift cards with the purchase card to add a layer of concealment over her purchases, and made fictitious entries in the VA's purchase-order tracking system to hide her conduct. *See id.* at 1381–82. That she used "inside information" and her unique position at the VA also supported applying the enhancement. *See id.* at 1381.

Here, the District Court did not clearly err by finding the sophisticated means enhancement applied. The District Court appropriately applied the enhancement based on the totality of Holland's conduct, even if each individual action was not sophisticated. *See Moran*, 778 F.3d at 977. The District Court relied in part on Holland's efforts to conceal her fraud. Those efforts included manipulating the payroll system, preparing false invoices, providing her employer with spreadsheets that contained false financial information, using various credit card accounts and bank accounts, manipulating credit card statements, and creating a credit card using M.J.'s name and social security number. Those efforts resemble the concealment in *Feaster*, where the defendant used gift cards and made fictitious entries in a tracking system to hide personal purchases on her employer's purchase card. *See Feaster*, 798 F.3d at 1382. The duration of the fraud also supports the Court's application of the enhancement. *See id.* at 1381. In addition, Holland's use of a false credit card account in M.J.'s name supported applying the enhancement, like how the use of accounts in others' names to hide transactions supported applying the enhancement in *Clarke*

21-13968                Opinion of the Court                    27

and *Campbell*.  *See Clarke*, 562 F.3d at 1166; *Campbell*, F.3d at 1315–16.

In addition, Holland's claim that the District Court "denied [her] request to consider whether or not the fraud was well concealed" is inaccurate.  Appellant's Brief at 18.  Though the District Court interpreted the argument as involving the victim's lack of vigilance, the District Court did not wholly fail to consider how well-concealed the fraud was.  The Court instead found Holland's argument that the scheme was not sophisticated because an audit could have revealed the fraud unpersuasive.

The District Court also applied the correct legal standard when it found Holland's argument about the discoverability of the scheme unpersuasive.  The Court focused on the defendant's conduct using appropriate factors that supported applying the sophisticated means enhancement.  It also noted that the discoverability of a scheme "might be relevant" in other cases.  So, it did not interpret the enhancement to mean the discoverability of a scheme is irrelevant.

The thrust of the District Court's reasoning was that the totality of Holland's scheme was sophisticated regardless of whether M.J. could have discovered the scheme by conducting an audit.  That reasoning reflected a correct understanding of the enhancement.

VI.

We ordinarily review double-counting claims *de novo*. *United States v. Little*, 864 F.3d 1283, 1291 (11th Cir. 2017). But we review unpreserved double-counting claims for plain error. *United States v. Suarez*, 893 F.3d 1330, 1336 (11th Cir. 2018). Under plain error review, we may correct an error when the defendant demonstrates: (1) an error occurred; (2) the error was plain; and (3) the error affected her substantial rights. *United States v. Hesser*, 800 F.3d 1310, 1324 (11th Cir. 2015). We then only exercise our discretion to correct the error when it seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.*

For an error to be plain under the second prong of the test, "[s]uch error must be so clearly established and obvious that it should not have been permitted by the trial court even absent the defendant's timely assistance in detecting it." *Id.* at 1325 (internal quotation marks omitted). "When the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (internal quotation marks omitted).

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Flanders*, 752 F.3d 1317, 1340 (11th Cir. 2014) (quotation marks omitted). But "[d]ouble counting a factor during sentencing is

permitted if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." *Id.* (quotation marks omitted). Our Court presumes separate sections apply cumulatively absent specific direction to the contrary. *United States v. Babcock*, 924 F.3d 1180, 1196 (11th Cir. 2019). The sentencing guidelines also instruct that its sections apply cumulatively absent instruction to the contrary, even when they are triggered by the same conduct. U.S.S.G. § 1B1.1 cmt. n.4(B). So, what may look like impermissible double counting is often valid cumulative counting. *Babcock*, 924 F.3d at 1196 (internal quotation marks omitted).

Holland contends the District Court impermissibly double counted when it applied the sophisticated means enhancement. She claims the Court did so by considering: (1) Holland's concealment of her fraud, which she claims is inherent in fraud; (2) her access to different financial instruments, which she claims the abuse of private trust enhancement under U.S.S.G. § 3B1.3 already covered; and (3) the duration of the offense, which she claims the loss amount under U.S.S.G. § 2B1.1(b)(1)(H) already covered.

Holland does not cite, and we have not found, a case from this Court or the Supreme Court that has held that the way the District Court applied the sophisticated means enhancement constituted double counting under any of her theories. Neither the text of § 2B1.1(b)(10)(C) nor the application notes explicitly prohibit applying the sophisticated means enhancement cumulatively with the abuse of private trust enhancement. *See* § 2B1.1 cmt.

n.9(C).  And nothing in § 2B1.1(b)(10)(C) or the comments under § 2B1.1 cmt. n.9(C) explicitly prohibits considering the duration of the offense, the loss amount, or the kind of concealment efforts she used when applying the sophisticated means enhancement.  Accordingly, there can be no plain error.  *See Castro*, 455 F.3d at 1253.

In any event, Holland's double-counting theories lack merit. As to the argument that concealment is inherent in fraud, there is a difference between whether and how someone conceals a fraudulent scheme, and the sophisticated means enhancement addresses the method of concealment.  Here, the District Court found that the methods by which Holland committed and concealed her fraudulent schemes—including using various credit card accounts and manipulating payroll—involved sophisticated means, not that any concealment was enough to apply the enhancement.  This double-counting theory is merely a repackaged argument that the offense did not involve sophisticated means.  If the District Court applied the enhancement without citing any sophisticated methods of concealment, it would have erred by applying the enhancement at all, not because of double counting.

Considering the duration of the offense when applying the sophisticated means enhancement also does not double count the loss amount increase under § 2B1.1(b)(1)(H).  The Sentencing Commission intended for loss amount to serve as an important and distinct factor for sentencing crimes under § 2B1.1.  *See* § 2B1.1 cmt. background ("[A]long with other relevant factors under the guidelines, loss serves as a measure of the seriousness of the offense

and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline."). True, as Holland points out, the longer a scheme lasts, the more time someone has to steal money. But how much a defendant stole during the scheme is a distinct kind of harm from the scheme's sophistication or how long it lasted. And how long a scheme lasted is probative of its sophistication because "the length of time for which the conduct is not detected can reflect on the sophistication of the scheme." *Feaster*, 798 F.3d at 1381.

In addition, we do not find that the application of the abuse of trust enhancement (U.S.S.G. § 3B1.3) and the sophisticated means enhancement constituted impermissible double-counting. Nothing in the text of either enhancement explicitly prohibits courts from applying both enhancements. *See* § 3B1.3; § 2B1.1(b)(10)(C). Whether someone abused a position of trust to commit fraud is also conceptually distinct from whether someone used sophisticated methods to commit the fraud. Moreover, when someone who occupies a position of trust conceals a fraud scheme in sophisticated ways, she can steal a lot of money from an unsuspecting victim who does not think she needs to search vigorously for fraud. So, to the extent that applying both enhancements harshly punishes those who use sophisticated means to commit fraud from positions of trust, the Commission most likely intended that result. *See United States v. Humber*, 255 F.3d 1308, 1312 (11th Cir. 2001) (discussing how the sophisticated means enhancement

"reflect[s] an overall intent by the Sentencing Commission to impose harsher sentences for white-collar criminals").

★ ★ ★

For the above reasons, Holland has not shown that the District Court committed any error in applying the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C), or that the Court otherwise erred by engaging in impermissible double-counting.

**AFFIRMED.**